Michael Eugene OSBORNE, Appellant,

v.

UNITED STATES of America, Appellee.

Roger Lee PARKER, Appellant,

v.

UNITED STATES of America, Appellee.

Nos. 76–1154, 76–1158.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 13, 1976.

Decided Oct. 19, 1976.

---

**1016**

Thomas P. Howe, Walsh, Howe & Ebert, Clayton, Mo., for appellant, Michael Eugene Osborne.

Forriss D. Elliott and Richard A. Fredman, St. Louis, Mo., for appellant, Roger Lee Parker.

Barry A. Short, U. S. Atty., and Richard A. Heidenry, St. Louis, Mo., for appellee, United States.

Before GIBSON, Chief Judge, MARKEY,* Judge, and STEPHENSON, Circuit Judge.

MARKEY, Chief Judge, Court of Customs and Patent Appeals.

Parker and Osborne appeal from their joint conviction by jury of bank robbery in violation of 18 U.S.C. § 2113(a), (d).[1]  Os-

---

\* The Honorable Howard T. Markey, Chief Judge, United States Court of Customs and Patent Appeals, sitting by designation.

1.  18 U.S.C. § 2113(a) and (d) state:

(a) Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association; or

Whoever enters or attempts to enter any bank, credit union, or any savings and loan association, or any building used in whole or in part as a bank, credit union, or as a savings and loan association, with intent to commit in such bank, credit union, or in such savings and loan association, or building, or part thereof, so used, any felony affecting such bank or such savings and loan association and in violation of any statute of the United States, or any larceny—

Shall be fined not more than $5,000 or imprisoned not more than twenty years, or both.

\*    \*    \*    \*    \*    \*

(d) Whoever, in committing, or in attempting to commit, any offense defined in subsections (a) and (b) of this section, assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device, shall be fined not more than $10,000 or imprisoned not more than twenty-five years, or both.

borne seeks reversal of his conviction on two grounds: (1) that the trial court erred in excluding evidence showing that the government's key witness had a bad reputation for truth and veracity; and (2) that the trial court admitted hearsay testimony by Osborne's mother. Parker, in addition to the first ground above, complains that the trial court erred: (1) in refusing a proffered identification instruction to the jury; (2) permitting premature character evidence tending to bolster the testimony of its key witness prior to attack; (3) in allowing extrinsic evidence; and (4) in allowing testimony of an experiment. We affirm.

## Background

The government's key witness, Douglas, testified that the defendants discussed with him the possibility of robbing the bank some six months prior to the time the robbery actually took place. In preparation for the robbery, Parker obtained rubber masks and surgical gloves[2] and, with Osborne and Douglas, stole a tan Buick automobile. The automobile was secreted in a secluded area a short distance from the target bank and was to be the getaway vehicle. Four days prior to the actual robbery, Parker, Osborne and Douglas met in the secluded area, donned the rubber masks and gloves, and drove to the bank. With Douglas waiting in the car, Osborne and Parker approached the bank carrying shotguns under their coats. Before reaching the bank, they realized that they had been spotted and beat a hasty retreat. The three men returned to the Buick. Douglas testified that he wished to withdraw from the plan and intentionally left on the lights of the car to run down the battery, thus disabling the car for any further attempt.

Douglas did not tell either Parker or Osborne about the lights. Witnesses testified to seeing the vehicle parked in the secluded area Friday evening through Sunday preceding the actual robbery. Another witness testified to seeing Parker in the vicinity of the stashed car on the day preceding the robbery. On the morning of the robbery, Douglas testified, Parker and Osborne approached him concerning another attempt on the bank. Douglas refused. That afternoon the bank was robbed by two men wearing rubber masks and surgical gloves brandishing a shotgun and a handgun. A local resident observed that a robbery was in progress and, after attempting to shoot out the back tires of the fleeing vehicle gave chase.[3]

A witness testified to seeing a tan Buick stopped in the road some distance from the bank and a man running across the road to a blue station wagon. The witness observed that the driver of the Buick was wearing a rubber mask. The Buick continued down the road and was spotted by a Highway Patrolman who gave chase until the Buick crashed out of control on the side of the road. The Patrolman observed a man running from the crash, however, he was unable to apprehend him. The fleeing subject did, however, drop his jacket containing a book of matches. These matches were later identified as having been given to Parker by a local business concern.[4] Subsequent investigation revealed that a cardboard box and wrapping paper found in the crashed vehicle bore the latent fingerprints of Parker and Douglas, respectively. The box and paper matched those used for the rubber masks. Other witnesses testified to seeing automobiles matching the description of automobiles previously driven

---

2. Parker arranged for a friend in Minneapolis to buy and send him three rubber masks in the likeness of President Ford. These were shipped in a cardboard box wrapped in pink paper. Parker stole the surgical gloves from a hospital.

3. A Mr. Smith observed the robbery from across the street and broadcast on his citizen's band radio that a robbery was in progress.

When the robbers started to flee, Mr. Smith grabbed his shotgun but had no ammunition. He then gave chase in his pick-up truck, however, it was loaded with gravel and he soon lost the fleeing robbers.

4. Parker did testify, however, to giving these matches to Douglas on the day of the aborted robbery.

by Parker and Osborne [5] in the vicinity of the stashed Buick on the morning of the robbery. Two witnesses identified Parker as being the driver of one of the cars. Another witness testified to having loaned jumper cables to Parker and Osborne on the morning of the robbery.

## OPINION

Appellants' joint contention centers around the trial court's refusal to allow a defense witness to testify regarding Douglas' reputation for truth and veracity in the community. Appellants argue that Douglas' testimony was crucial to the government's case and that his credibility was open to question. The proffered testimony, according to appellants, would have indicated that Douglas' reputation in the community for truth and veracity was not good.

We, of course, agree with appellants that Fed.R.Evid. 608(a) [6] specifically provides that the credibility of a witness may be attacked by evidence of reputation. We have long recognized that testimony relating to the reputation for truth and veracity in the community of a witness is relevant and therefore admissible. *Swafford v. United States,* 25 F.2d 581 (8th Cir. 1928). In the broad, general sense of the Rule, therefore, the trial court erred in excluding appellants' proffered testimony. The question remains, however, whether that error was of such prejudicial nature as to warrant a new trial. If exclusion of the evidence was harmless error, a new trial should not be ordered. *Kotteakos v. United States,* 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946), Fed.R.Crim.P. 52(a).

■ We are convinced that the exclusion was not prejudicial. Douglas himself testified to his implication in the first robbery attempt, to his experimentation with drugs, and to his undesirable discharge from the Army. He further admitted that the United States Attorney's Office would recommend dropping the charge [7] against him for testifying at the trial. [8] Parker effectively corroborated Douglas' testimony regarding his implication in the prior attempt. Thus the excluded testimony could only have been cumulative at best. [9]

■ Parker assigns as error the trial court's refusal to grant a proposed jury instruction regarding identification, urging us to adopt the model instruction of *United States v. Telfaire,* 152 U.S.App.D.C. 146, 469 F.2d 552 (1972). We have previously considered the model identification instruction proposed in *Telfaire* [10] and agreed that it may have application in cases involving eyewitness identification. In the present case, however, no question of identification at the scene of the crime was presented. There was no error in refusing a superfluous instruction.

During direct examination, Douglas was questioned regarding his whereabouts directly prior to and during the crime. He testified that he picked up his girl friend

---

**5.** Parker evidently frequently drove his girl friend's white-over-red Monte Carlo. Osborne used his mother's blue station wagon.

**6.** Fed.R.Evid. 608(a) states:
   (a) Opinion and reputation evidence of character. The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness, and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.

**7.** Douglas was indicted on a charge of aiding and abetting Parker and Osborne in the bank robbery.

**8.** It was also adduced that Douglas' probation on the earlier burglary conviction would be revoked due to his involvement in the robbery.

**9.** Moreover, the court instructed the jurors to carefully scrutinize the testimony and the circumstances under which it was given; to consider with greater care the testimony of an accomplice who would receive immunity from punishment for his testimony; that conviction of a felony could discredit or impeach the testimony of a witness; and that a witness' prior inconsistent statements could impeach that witness' testimony.

**10.** *United States v. Roundtree,* 527 F.2d 16 (8th Cir. 1975).

from work at 1:00 for lunch and returned her to work at 2:00 thereafter picking up his sister from work at 2:20. The robbery occurred at 1:15. Defense counsel characterizes this testimony as a "bolstering" of Douglas' testimony before his credibility had been put into issue.

■ We have recognized the general rule to be that "until the reputation of a witness for truth and veracity has been assailed by evidence in relation to it, it is not in issue, and that there accordingly exists in such a situation no right to introduce testimony in support of it." *Homan v. United States,* 279 F.2d 767, 772 (8th Cir. 1960), *cert. denied,* 364 U.S. 866, 81 S.Ct. 110, 5 L.Ed.2d 88 (1960). The basis for the rule is a legal presumption that witnesses are of good moral character and that, absent evidence to the contrary, no purpose is served in denying evidence of bad character. 4 Wigmore, Evidence § 1104 (Chadbourne rev. 1972), McCormick, Evidence § 49 (2d ed. 1972). Fed.R.Evid. 608(a), the Notes of the Advisory Committee on the Proposed Rules are in accord:

> Character evidence in support of credibility is admissible under the rule only after the witness' character has first been attacked, as has been the case at common law.

■ This rule is inapplicable to the testimony challenged here, however. Establishing the whereabouts of Douglas preceding, during and after the crime was background evidence relating to the actual robbery. This testimony was relevant to show that while Douglas was initially involved in planning the robbery, he withdrew from the venture and established his complete withdrawal by detailing his activities during the period in which the offense was committed.

We hold that it was not error for the trial court to admit testimony which, in this case, detailed Douglas' movements or whereabouts during the robbery.

Parker further contends that the trial court erred in admitting into evidence testimony of Douglas' girl friend and sister corroborating the alibi. Parker argues that Fed.R.Evid. 608(b) [11] specifically excludes this evidence as extrinsic. Far from being extrinsic, however, the testimony had a direct material bearing upon the crime at issue. The jury had been told that three men, Douglas, Parker and Osborne had previously planned and attempted to execute the crime and that only two men actually perpetrated the crime. Douglas denied that he was present during the crime. Testimonial and other evidence tended to indicate that the actual perpetrators were Parker and Osborne. The testimony of Douglas' girl friend and sister was directly relevant to the jury's deliberations. The trial court committed no error, therefore, in admitting it.

To test the allegation that Parker, on the day of the robbery, was applying for unemployment benefits at around 2:00 at a railway office approximately 23 miles from the vehicle stash point in the earlier robbery attempt, an FBI agent drove over a route between these two points and testified that it took him 24 minutes. The inference was that Parker would have had time to participate in the robbery and still be present at the railway office by 2:00. Parker challenges the introduction of this testimony as error because, although there was a car hidden during the aborted attempt, there was no evidence that a car was hidden there the day of the actual robbery; the experi-

11. Fed.R.Evid. 608(b) states:
(b) Specific instances of conduct. Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.
The giving of testimony, whether by an accused or by any other witness, does not operate as a waiver of his privilege against self-incrimination when examined with respect to matters which relate only to credibility.

ment assumed the existence of material facts not in evidence; and there was no evidence that attempts were made during the experiment to simulate conditions present on the day of the robbery.

The admissibility of evidence of experiments rests within the sound discretion of the trial court and will not be overturned absent a clear showing of abuse of discretion. *Ramseyer v. General Motors,* 417 F.2d 859 (8th Cir. 1969). The experimental test run herein did not purport to recreate events as they actually occurred on the day of the robbery but rather established whether it was physically possible for Parker to have traversed the distance between the stash point and the railway office in the time allowed. The experiment did not depend upon expert opinion testimony. We find no clear abuse of discretion in the allowance of this testimony.

Osborne challenges the admission of the hearsay testimony of his mother. She testified that Osborne had used her car on the day preceding the robbery and had not returned it until 3:30 on the day of the robbery. This was in line with Osborne's testimony. She further testified that she had previously told investigators that the car was parked in front of her residence the entire day of the robbery. She was given an opportunity to explain or deny this previous statement and she denied it in part. Thus, a proper foundation under Fed.R. Evid. 613 was laid for introduction of evidence of her prior inconsistent statement. The trial court did not err in admitting her testimony or evidence of a prior inconsistent statement on her part.

Affirmed.