FOR PUBLICATION

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, v. RAYMOND RUIZ, JR., *Defendant-Appellant*. | No. 10-50211 D.C. No. 5:09-cr-00099-VAP-1 OPINION |

Appeal from the United States District Court
for the Central District of California
Virginia A. Phillips, District Judge, Presiding

Argued and Submitted
December 7, 2011—Pasadena, California

Filed March 26, 2013

Before: Harry Pregerson and Richard A. Paez, Circuit
Judges, and Suzanne B. Conlon, District Judge.[*]

Opinion by Judge Paez;
Concurrence by Judge Pregerson

---

[*] The Honorable Suzanne B. Conlon, United States District Judge for the
Northern District of Illinois, sitting by designation.

## SUMMARY[**]

### Criminal Law

The panel affirmed a conviction for being a felon in possession of a firearm and ammunition in a case in which the defendant asserted, among other things, that the district court erred in failing to give the jury a specific unanimity instruction and that the prosecutor committed misconduct in his closing argument.

The panel held that the indictment was not duplicitous and the district court did not err in failing to give a specific unanimity instruction, where the defendant was charged with a single, continuous act of possession over a ten-minute period.

Because any error was harmless, the panel did not decide whether the prosecutor's argument – that in order to find the defendant not guilty, jurors would have to conclude that police officers lied – altered the burden of proof.

Reviewing additional allegations of prosecutorial misconduct for plain error, the panel held that the prosecutor's statement that the jury should convict "on the basis of what the United States considers is overwhelming evidence that the defendant is guilty" was improper vouching, but that the error was not prejudicial. The panel held that the defendant's additional allegations of misconduct were meritless.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Concurring, Judge Pregerson wrote that the prosecutor struck foul blows by repeatedly telling the jury that they could acquit only if they found that both officers were liars, which distorts the burden of proof and misstates the law, but is condoned by harmless error review.

**COUNSEL**

Brianna J. Fuller, Deputy Federal Public Defender, Los Angeles, California, for Defendant-Appellant.

Joseph B. Widman, Assistant United States Attorney, Riverside, California, for Plaintiff-Appellee.

**OPINION**

PAEZ, Circuit Judge:

Raymond Ruiz, Jr. ("Ruiz") appeals his conviction for being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g). We have jurisdiction under 28 U.S.C. § 1291 and we affirm.

## I.  BACKGROUND

On September 6, 2008, sisters Diane and Daisy Fuentes saw a man holding a shotgun, mumbling, and walking down a street in their residential neighborhood. Diane called 911. When questioned by a San Bernardino police officer later that evening, both sisters identified the man as Raymond Ruiz, Jr.

Five minutes later, San Bernardino Police Officer Peck responded to the 911 call in a police helicopter. From 300 to 500 feet in the air, Officer Peck saw a man run around the back side of a house and throw a shoe box-sized item over a fence into a vacant lot. Another police officer, Officer Porch, arrived at the scene and searched the vacant lot. Officer Porch found a shoe box with eight to twelve 12-gauge shotgun shells. A third officer, Officer Verbanic, arrived at the house and confronted Ruiz, who was attempting to enter the house through the back door. Officer Verbanic ordered Ruiz to get on the ground. As Ruiz did so, Officer Verbanic noticed a shotgun to Ruiz's left, about an arm's length away. The 12-gauge shotgun ammunition matched the shotgun found by Officer Verbanic.

Ruiz was arrested. A fourth officer, Officer Ludikhuize, took Ruiz to a squad car, where Ruiz waived his *Miranda* rights and allegedly stated that the shotgun found next to him belonged to his father and that he had been trying to hide it when the police arrived. At trial, Officer Ludikhuize testified to that effect, while Ruiz denied making these statements.

A one-count indictment charged Ruiz with being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g). On December 10, 2009, a jury found Ruiz guilty of the sole count in the indictment.

Ruiz appeals his conviction and raises five issues, two of which we address in detail: whether the district court erred in failing to give the jury a specific unanimity instruction, and whether the Assistant United States Attorney committed prosecutorial misconduct in his closing argument when he: (a) allegedly vouched for government witnesses, (b) commented on the strength of the government and defense

cases, (c) allegedly denigrated defense counsel, and (d) argued that, in order to acquit Ruiz, the jury would have to conclude that Officers Peck and Ludikhuize were lying.[1]

## II. DISCUSSION

### A. Unanimity Instruction

Ruiz argues that the district court erred in failing to give a specific unanimity instruction because the one-count indictment in effect charged three separate offenses: (1) possession of the shotgun as witnessed by the Fuentes sisters,

---

[1] Ruiz also argues (1) that the district court erred by limiting cross-examination of Officer Ludikhuize regarding a previous incident where his training and experience led him to arrest an innocent person, (2) that the district court erred by failing to give a cautionary jury instruction prior to the readback of Officer Verbanic and Ludikhuize's testimony, and (3) that cumulative error warrants a new trial. These contentions are without merit. The district court's limitation on defense counsel's cross-examination of Officer Ludikhuize did not violate Ruiz's rights under the Confrontation Clause because Ludikhuize's past misidentification of cocaine was not relevant, and the jury had sufficient evidence to assess his credibility. *See United States v. Larson*, 495 F.3d 1094, 1103–04 (9th Cir. 2007) (en banc); *United States v. Bridgeforth*, 441 F.3d 864, 868 (9th Cir. 2006). Likewise, although it was plain error for the district court to permit readback of Officers Verbanic and Ludikhuize's rebuttal testimony without a cautionary instruction, the error was not prejudicial in light of the substantial evidence against Ruiz. *See United States v. Stinson*, 647 F.3d 1196, 1217–18 (9th Cir. 2011), *cert. denied*, 132 S. Ct. 1768 and *cert. denied*, 132 S. Ct. 1773, *reh'g denied*, 132 S. Ct. 2427 (2012); *United States v. Newhoff*, 627 F.3d 1163, 1169 (9th Cir. 2010). Finally, since the errors that occurred at trial were isolated, reversal for cumulative error is not warranted. *See United States v. Del Toro-Barboza*, 673 F.3d 1136, 1155 (9th Cir.), *cert. denied*, 133 S. Ct. 586 and *cert. denied*, 133 S. Ct. 588 (2012); *United States v. Inzunza*, 638 F.3d 1006, 1024–25 (9th Cir. 2011), *cert. denied*, 132 S. Ct. 997 (2012); *United States v. Frederick*, 78 F.3d 1370, 1381 (9th Cir. 1996).

(2) possession of the ammunition found in the shoe box, and (3) constructive possession of the shotgun at the time Ruiz was arrested. Because Ruiz did not request a specific unanimity instruction at trial, we review the district court's failure to give such an instruction for plain error. *United States v. Hofus*, 598 F.3d 1171, 1175 (9th Cir. 2010).

In *Schad v. Arizona*, the Supreme Court explained that "an indictment need not specify which overt act, among several named, was the means by which a crime was committed." 501 U.S. 624, 631 (1991). As a corollary to this principle, "there is no general requirement that the jury reach agreement on the preliminary factual issues which underlie the verdict," since "different jurors may be persuaded by different pieces of evidence, even when they agree upon the bottom line." *Id.* at 631–32 (internal quotation marks and citation omitted); *see also United States v. Lyons*, 472 F.3d 1055, 1069 (9th Cir. 2007) ("[J]urors need not be unanimous as to a particular theory of liability so long as they are unanimous that the defendant has committed the underlying substantive offense.").

Despite this general rule, if there is "a genuine possibility of jury confusion" or if "a conviction may occur as the result of different jurors concluding that the defendant committed different acts," then "an instruction should be given to the effect that the jury may not convict unless it unanimously agrees to a particular set of facts." *United States v. Anguiano*, 873 F.2d 1314, 1319 (9th Cir. 1989) (citing *United States v. Echeverry*, 719 F.2d 974, 975 (9th Cir. 1983) (internal

quotation marks omitted)).[2]  Ruiz argues that a genuine risk of juror confusion existed at trial since the government's theory of possession relied on three distinct sets of underlying facts.  As a result, certain jurors may have credited the Fuentes sisters' testimony, while others credited Officers Peck's, Verbanic's, or Ludikhuize's testimony, without reaching unanimous agreement as to any set of facts sufficient for conviction.

We disagree.  The indictment was not duplicitous.  Ruiz was charged with possession of a firearm and ammunition during *one ten-minute period* on *one night* in *one location*. While numerous witnesses testified that Ruiz possessed the shotgun and ammunition at different times throughout that ten minute period, their testimony does not establish that Ruiz was charged with distinct acts of possession.  Indeed, possession is presumed continuous absent specific evidence that the defendant lost possession at some point.  *See, e.g.*, *United States v. Horodoner*, 993 F.2d 191, 193 (9th Cir. 1993) (explaining that "possession" is a course of conduct, not an act, and holding that the defendant retained possession of a firearm throughout a ten day period even when the firearm was in a repair shop); *United States v. Jackson*, 479 F.3d 485, 491 (7th Cir. 2007) (holding that no unanimity instruction was required where "the indictment charged not multiple offenses under one count of being a felon in

---

[2] *Anguiano* found three situations in which the possibility of juror confusion may require a unanimity instruction: (1) the jury actually indicates that it is confused, (2) the indictment is so broad and ambiguous that it may confuse the jury, or (3) the evidence is so factually complex that juror confusion may occur.  *See Anguiano*, 873 F.2d at 1319–20. None of these circumstances existed here.

possession, but a single course of illegal conduct that spanned three days").

Indeed, consistent with *Schad*, the jurors were free to convict on whichever evidence they believed supported Ruiz's guilt beyond a reasonable doubt, even if they failed to reach agreement on which pieces of evidence were ultimately persuasive. 501 U.S. at 631–32; *see also United States v. Ferris*, 719 F.2d 1405, 1407 (9th Cir. 1983) (concluding, where the defendant was charged with one count of possession with intent to distribute LSD within a three month period, that "the various acts indicating knowing possession were not inconsistent with each other; and even if one set of jurors might have focused on one part of the transaction while another set focused on a different part, it does not follow that either set of jurors were in disagreement with the other"); *cf. United States v. Payseno*, 782 F.2d 832, 837 (9th Cir. 1986) (holding that a specific unanimity instruction was required where the indictment charged three acts of extortion which were "directed at separate victims, occurred at different times and different locations, involved different methods of communicating the threats, and were carried out by varying numbers of individuals").

Because Ruiz was charged with a single, continuous act of possession over a ten-minute period, we find no error in the district court's failure to give a specific unanimity instruction.

## B. Prosecutorial Misconduct

To highlight parts of his closing argument, the prosecutor utilized a PowerPoint slide presentation consisting of pictures of the alleged crime scene, photographs of the witnesses who

testified at trial, summaries of the testimony presented, and visual representations of the jury instructions, and of the government's key arguments. Following a slide depicting the first element of the offense—"the defendant knowingly possessed the firearm or ammunition"—were three slides depicting alternative "way[s] to find defendant guilty." The slides stated that the jurors could find Ruiz not guilty "only" if they found that Officers Peck and Ludikhuize "lied to you" and that the Fuentes sisters were mistaken. The court overruled Ruiz's objection to the slides.

"Where defense counsel objects at trial to acts of alleged prosecutorial misconduct, we review for harmless error on defendant's appeal; absent such an objection, we review under the more deferential plain error standard." *United States v. Wright*, 625 F.3d 583, 610 (9th Cir. 2010) (internal quotation marks and citation omitted). Of the four variants of misconduct that Ruiz challenges on appeal, he objected at trial only to the prosecutor's argument that, in order to find Ruiz not guilty, jurors would have to conclude that Officers Peck and Ludikhuize lied. Accordingly, we review the 'someone must be lying' statements for harmless error, and the remainder of the challenged statements for plain error.

### 1. 'Someone Must Be Lying' Statements

Under harmless error review, claims of prosecutorial misconduct are "viewed in the entire context of the trial," and reversal "is justified only if it appears more probable than not that prosecutorial misconduct materially affected the fairness of the trial." *United States v. Younger*, 398 F.3d 1179, 1190 (9th Cir. 2005) (internal quotation marks and citations omitted). At the heart of Ruiz's argument is his contention that the prosecutor's statements presented the jury with a

false choice between his and the officers' accounts, since the officers could have testified honestly, but nonetheless mistakenly perceived the events on the night in question. This false choice, he asserts, improperly shifted the burden of proof to the defense.

As we have previously explained, "credibility is a matter to be decided by the jury." *United States v. Sanchez*, 176 F.3d 1214, 1224 (9th Cir. 1999). To that end, "prosecutors have been admonished time and again to avoid statements to the effect that, if the defendant is innocent, government agents must be lying." *Id.* (citation and internal quotation marks omitted). "It is also true, however, that the prosecution must have reasonable latitude to fashion closing arguments. Inherent in this latitude is the freedom to argue reasonable inferences based on the evidence. In a case that essentially reduces to which of two conflicting stories is true, it may be reasonable to infer, and hence to argue, that one of the two sides is lying." *United States v. Molina*, 934 F.2d 1440, 1445 (9th Cir. 1991) (citing *United States v. Laurins*, 857 F.2d 529, 539 (9th Cir. 1988) (holding that the prosecutor's statement that defendant was a liar could be construed as a comment on the evidence) and *United States v. Birges*, 723 F.2d 666, 672 (9th Cir. 1984) ("It is neither unusual nor improper for a prosecutor to voice doubt about the veracity of a defendant . . . .")); [3] *see also United States v.*

---

[3] In *Molina*, we found the following statements permissible, where the defendant's testimony flatly contradicted that of a government witness: (1) "[Y]ou could only come to one conclusion: That somebody is lying. And who is that? Who's lying? Is Special Agent Reyes lying?"; (2) "The one who lied to you is the one who is guilty of possessing with the intent to distribute the cocaine. And that's the defendant, Frank Molina."; and (3) "So when you go back into the jury room remember . . . that Mr. Molina lied to you on the stand and remember that the reason he lied to you is

*Wilkes*, 662 F.3d 524, 539–42 (9th Cir. 2011) (same); *United States v. Tucker*, 641 F.3d 1110, 1120–21 (9th Cir. 2011) ("Prosecutors can argue reasonable inferences based on the record, and have considerable leeway to strike hard blows based on the evidence and all reasonable inferences from the evidence. A prosecutor may express doubt about the veracity of a witness's testimony [and] may even go so far as to label a defendant's testimony a fabrication." (alteration in original) (internal quotation marks and citations omitted)).

We addressed a similar contention in *United States v. Wilkes*. In that case, the defendant asserted that prosecutors engaged in improper burden-shifting by characterizing his testimony as a "preposterous charade" and arguing in closing that "each [government witness], if you think about their testimony and what they told you, you either have to believe all of those people or you believe Brent Wilkes. That's the choice before you. You can't believe both." 662 F.3d at 541 (alteration in original). The court rejected this assertion, reasoning that, because the case "'reduce[d] to which of two conflicting stories is true,'" the prosecutor's argument was a permissible inference from the evidence. *Id.* (quoting *Molina*, 934 F.2d at 1145). The court further noted that the "prosecution made the alleged improper statement after explaining at length to the jury what it had to prove in order for the jury to find Wilkes guilty. In this context, such a statement is considered to be nothing more than an 'isolated moment' in a 28-day trial." *Id.* (citing *United States v. Moreland*, 622 F.3d 1147, 1162–63 (9th Cir. 2010)).

_____

because he is guilty, and that's the only reason and the only motivation for him to lie." 934 F.2d at 1445 (alterations in the original) (emphasis omitted).

*United States v. Tucker* is also instructive. In that case, the prosecutor listed various facts that the jury would have to find if it were to determine that the defendant was not guilty. 641 F.3d at 1122. The court rejected the defendant's argument that the prosecutor thereby improperly shifted the burden of proof, reasoning that the prosecutor's comments "were made in the context of explaining why the jury should reject Tucker's version of events, and only *after* the prosecutor already had said that the government was required to prove beyond a reasonable doubt that Tucker was guilty of possession of a firearm. . . . While the prosecutor's phrasing was inartful, his meaning is evident from context: to believe the defendant's account, the jury would have to believe implausible aspects of his testimony. This sort of argumentation is permissible." *Id.* (emphasis original) (citing *United States v. Vaandering*, 50 F.3d 696, 701–02 (9th Cir. 1995)).

Here, the prosecutor's argument came very close to altering the burden of proof. Although Ruiz's testimony was squarely at odds with Officer Ludikhuize's testimony in one key respect—namely, Ruiz denied confessing to Ludikhuize that he was attempting to hide the shotgun when police arrived—his testimony vis-a-vis Officer Peck's observation of an item thrown over the fence into the adjoining vacant lot was somewhat more equivocal. Ruiz testified that, upon observing Peck's spotlight trained on his grandmother house, he attempted to hide because he was drinking beers with his father in violation of his parole. To this end, he ran around the side of the house, where he stated that he may have thrown his beer bottle into the backyard adjoining the fence and vacant lot, but could not recall with certainty how he disposed of the beer bottle. Although Ruiz also testified that he did not throw "anything" over the fence, including the

"panel" or shoe box-sized item that Peck observed, Peck could have mistaken the size and shape of the item thrown from his vantage point nearly two football fields above the scene. As the foregoing suggests, the prosecutor's argument that either Peck or Ruiz must be lying could well be construed as arguing an inference unsupported by the evidence, and thereby altering the burden of proof.

We need not decide the issue, however, because we conclude that, even if the prosecutor committed error, the error was harmless. Like in *Wilkes* and *Tucker*, the prosecutor made his 'someone must be lying' argument following a lengthy explanation of the elements that the government was required to prove, and a reminder to the jury of the government's burden of proof. Although Ruiz's trial was significantly shorter than Wilkes's and the prosecutor's comments cannot reasonably be considered isolated, the government's evidence of Ruiz's guilt was substantial: it included the 12-gauge shotgun recovered from the scene, the shoe box containing 12-gauge ammunition recovered by Officer Porch as directed by Officer Peck, and the testimony of numerous witnesses identifying Ruiz as possessing the ammunition or shotgun during the night in question. In light of the strength of this evidence, the prosecutor's argument did not materially affect the fairness of Ruiz's trial. *See Younger*, 398 F.3d at 1190; *United States v. Nobari*, 574 F.3d 1065, 1083 (9th Cir. 2009) ("While we remain troubled . . . by the prosecution's [improper argument], we cannot conclude that the defendants were prejudiced by these actions, in light of the overwhelming evidence against them. Accordingly, . . . we hold that the errors committed at the defendants' trial were harmless beyond a reasonable doubt, and we uphold their convictions."); *United States v. Bashaw*, 509 F.2d 1204, 1206 (9th Cir. 1975) (per curiam) (finding prosecutorial

misconduct harmless "in light of the . . . fact that the evidence of [defendant's] guilt was overwhelming").

## 2.  Additional Allegations of Misconduct

Under plain error review, we will reverse Ruiz's conviction only if the government's statements were improper and the statements resulted in substantial prejudice. *United States v. Koon*, 34 F.3d 1416, 1445 (9th Cir. 1994), *aff'd in part, rev'd in part on other grounds*, 518 U.S. 81 (1996).  "Even if both prongs of the test are met, the plain error doctrine authorizes the Courts of Appeals to correct only particularly egregious errors . . . that seriously affect the fairness, integrity or public reputation of judicial proceedings."  *United States v. Sanchez*, 659 F.3d 1252, 1256 (9th Cir. 2011) (alteration in original) (internal quotation marks and citations omitted).

"Improper vouching 'consists of placing the prestige of the government behind a witness through personal assurances of the witness's veracity, or suggesting that information not presented to the jury supports the witness's testimony.'" *Younger*, 398 F.3d at 1190 (quoting *United States v. Leon-Reyes*, 177 F.3d 816, 822 (9th Cir. 1999) (internal citation and quotation marks omitted)).  There is "no bright-line rule about when vouching will result in reversal.  Rather, we consider a number of factors including: the form of vouching; how much the vouching implies that the prosecutor has extra-record knowledge of or the capacity to monitor the witness's truthfulness; any inference that the court is monitoring the witness's veracity; the degree of personal opinion asserted; the timing of the vouching; the extent to which the witness's credibility was attacked; the specificity and timing of a curative instruction; the importance of the

witness's testimony and the vouching to the case overall. When reviewing for plain error, we then balance the seriousness of the vouching against the strength of the curative instruction and closeness of the case." *United States v. Necoechea*, 986 F.2d 1273, 1278 (9th Cir. 1993).

Ruiz argues that the prosecutor improperly commented on the strength of the evidence by describing it as "overwhelming" on five separate occasions, suggesting that the case was "not rocket science," and stating that Ruiz's theory of defense seemed "made up." A prosecutor "has no business telling the jury his individual impressions of the evidence." *United States v. Kerr*, 981 F.2d 1050, 1053 (9th Cir. 1992); *see also United States v. McKoy*, 771 F.2d 1207, 1210–11 (9th Cir. 1985) ("The rule that a prosecutor may not express his personal opinion of the defendant's guilt or his belief in the credibility of witnesses is firmly established."); *United States v. Grunberger*, 431 F.2d 1062, 1068 (2d Cir. 1970) (concluding that the prosecutor engaged in improper vouching when he stated, "I don't know of a case where the evidence has been as strong as it has been in this case to establish the guilt of any defendant").

Here, the majority of the prosecutor's argument was proper. In two instances, for example, the prosecutor characterized the evidence as overwhelming in an effort to explain why officers at the scene did not take additional

investigatory steps.[4]  These statements represent reasonable inferences from the evidence.  *See Younger*, 398 F.3d at 1190.

Nonetheless, the prosecutor's statement that the jury should convict "on the basis of what the United States considers is overwhelming evidence that the defendant is guilty" exceeded mere inference; indeed, the prosecutor suggested to the jury that he offered an expert assessment of the strength of the government's case, in light of his training and expertise in criminal prosecutions.  This was improper vouching.  *See McKoy*, 771 F.2d at 1210–11.

On balance, however, we conclude that the error was not prejudicial.  An "[a]nalysis of the harm caused by vouching depends in part on the closeness of the case."  *United States v. Frederick,* 78 F.3d 1370, 1378 (9th Cir. 1996).  Here, as discussed above, the evidence against Ruiz was substantial. We therefore cannot conclude that the prosecutor's improper vouching affected the fairness of Ruiz's trial.

Ruiz's additional contentions are without merit.  Although the prosecutor several times used the words "we know" to describe the evidence, he did so only to "marshal evidence actually admitted at trial and reasonable inferences from the

---

[4] The prosecutor first stated, "And there was some references [in defense counsel's closing argument] to: Oh, you could have done this other thing, the investigation was deficient, something along those lines.  Ladies and gentlemen, we heard from the officers.  They showed up, routine call, 'man with a gun:['] Found overwhelming evidence of guilt.  Still interviewed him, still did the fingerprints, still did the whole thing and booked.  That's the evidence.  There is nothing untoward here."  He later stated, "The police officers: 'A man with a gun' call in the City of San Bernardino, 10:30 Saturday night, a routine call.  As I said, they immediately found overwhelming evidence of guilt. . . ."

evidence, not to vouch for witness veracity or suggest that evidence not produced would support a witness's statements."[5] *Younger*, 398 F.3d at 1191. Likewise, although the prosecutor described the officers as "professional[s] . . . just doing their jobs," he did not urge the jury to respect the officers simply because of their titles, nor did he personally assure the jury of the officers' veracity.[6] There was nothing improper about these aspects of the prosecutor's argument. *See Necoechea*, 986 F.2d at 1279 ("The prosecutor merely argued that [the government's witness] was telling the truth, an argument the prosecutor had to make in order to convict Necoechea. These statements do not imply that the government is assuring [its witness's] veracity, and do not reflect the prosecutor's personal beliefs."); *cf. United States v. Gracia*, 522 F.3d 597, 600 (5th Cir. 2008) (concluding that the prosecutor engaged in misconduct when he stated, "I'm going to ask you to respect their efforts as law enforcement officials and to believe the testimony that they offered."); *United States v. Garza*, 608 F.2d 659, 661 (5th Cir. 1979) (finding misconduct where the prosecutor stated, "I told you while ago that I thought Rudy Gonzales over here was a professional man. And I think these Drug Enforcement

---

[5] For example, the prosecutor stated: (1) "[The Fuentes sisters] saw [Ruiz] with the shotgun. How do we know that?"; (2) "How do we know that [Ruiz threw the shoe box with the ammunition]? . . . Officer Peck saw him do it; but it's not just that. We know Officer Peck was correct because he told the guy on the ground . . . ."; and, (3) "How do we know [that Ruiz was trying to hide the shotgun]? First of all, it was right at his feet . . . ."

[6] The prosecutor made the following statements: (1) "Officer Peck, a professional, came across as a professional in this case, doing his job"; (2) "Officer Ludikhuize, you know, you saw him again today. . . . Just doing his job"; and, (3) "The police officers . . . were just doing their jobs, just police officers responding to an emergency call."

Administration people are professionals. . . .  He talks about motive.  I think their motives are pure as the driven snow.").

Finally, the prosecutor's characterization of the defense's case as "smoke and mirrors" was not misconduct.  The prosecutor's comments were directed to "the strength of the defense on the merits," *United States v. Nobari*, 574 F.3d 1065, 1079 (9th Cir. 2009), and did not amount to an *ad hominem* attack on defense counsel.  *See Williams v. Borg*, 139 F.3d 737, 744–45 (9th Cir. 1998) (finding no misconduct when prosecutor referred to defense's closing argument as "trash"); *cf. Sanchez*, 176 F.3d at 1224 (finding misconduct where the prosecutor stated, "the defense in this case read the records and then told a story to match the records.  And, ladies and gentlemen, I'm going to ask you not to credit that scam that has been perpetrated on you here").

In sum, we conclude that the majority of the prosecutor's statements during closing argument were not improper, and that those that were improper did not result in substantial prejudice.

## III.     CONCLUSION

For the reasons stated, Ruiz's conviction is **AFFIRMED**.

---

PREGERSON, Circuit Judge, concurring:

> The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as

compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor -- indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.

*Berger v. United States*, 295 U.S. 78, 88 (1935) (Sutherland, J.).

I reluctantly join the majority's opinion, but write separately to express my views on how this case was conducted. There was no reason for the prosecutor to push the envelope and ignore Justice Sutherland's warning that a prosecutor "may strike hard blows," but not "foul ones." *Id*. The prosecutor struck foul blows by repeatedly telling the jury that they could acquit Ruiz only if they found that both Officer Peck and Officer Ludikhuize were liars. The prosecutor emphasized his improper statements with PowerPoint slides that stated: "Only Way Not Guilty: Officer Peck lied to you" and "Only way not guilty: Officer Ludikhuize lied to you."

The prosecutor's argument relies upon specious reasoning. The jury could have concluded that the officers were telling the truth, but still have determined that the

evidence put forth by the government was not sufficient to find the defendant guilty beyond a reasonable doubt. The prosecutor instead told the jury that to find the defendant not guilty, it first must find that the two officers lied. This distorts the burden of proof and misstates the law, but sadly is condoned by the incantation: "harmless error review."