**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

CITLALLI FLORES,
*Defendant-Appellant*.

No. 14-50027

D.C. No.
3:12-cr-03054-MMA-1

OPINION

Appeal from the United States District Court
for the Southern District of California
Michael M. Anello, District Judge, Presiding

Argued and Submitted
December 8, 2014—Pasadena, California

Filed September 23, 2015

Before: Harry Pregerson, Kim McLane Wardlaw,
and Marsha S. Berzon, Circuit Judges.

Opinion by Judge Wardlaw
Dissent by Judge Pregerson

## SUMMARY[*]

### Criminal Law

Affirming a conviction and sentence for importation of marijuana, the panel found merit in the defendant's claims of prosecutorial misconduct, but held that the misconduct does not rise to the level of plain error.

The panel held that the government misstated the law by telling the jury it could convict the defendant based on her admission to carrying marijuana to Mexico on the date of her arrest, and misstated the defendant's testimony thereby making an unsupported factual claim, but that the misstatements did not substantially prejudice her. The panel held that the government's improper vouching for a witness did not substantially prejudice the defendant. The panel rejected the defendant's contentions that the government improperly shifted and undermined the burden of proof. The panel rejected the defendant's arguments that the prosecutor's statements about the defendant were improper. Reviewing for plain error, the panel concluded that the prosecution's improper statements, whether viewed individually or cumulatively, do not warrant reversal.

The panel rejected the defendant's arguments that the district court erred in denying her motion to suppress evidence obtained from her Facebook account and that the district court abused its discretion by admitting evidence of her personal drug use at trial.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel held that the district court did not err in applying an obstruction of justice enhancement pursuant to U.S.S.G. § 3C1.1 based on the defendant's efforts to have content from her Facebook account deleted.

Dissenting, Judge Pregerson wrote that the Assistant U.S. Attorney's serious violations of the rules of permissible questioning and argument do not warrant invocation of the plain error rule.

## COUNSEL

Morgan D. Stewart (argued), Federal Defenders of San Diego, Inc., San Diego, California, for Defendant-Appellant.

Michelle L. Wasserman (argued), Laura E. Duffy, and Bruce R. Castetter, Office of the United States Attorney, San Diego, California, for Plaintiff-Appellee.

## OPINION

WARDLAW, Circuit Judge:

Citlalli Flores appeals her conviction and sentence for importation of marijuana in violation of 21 U.S.C. §§ 952 and 960. Although we find merit in her claims of prosecutorial misconduct, the misconduct does not rise to the level of plain error. Flores's remaining claims of error lack merit. Accordingly, we affirm her conviction and sentence.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On the evening of June 21, 2012, Flores was stopped by Customs and Border Protection ("CBP") Officer Benjamin Brown as she entered the United States following a day trip to Tijuana, Mexico. When Flores handed Brown her driver's license, her hands were shaking, and she looked back towards the rear passenger-side of her car several times. Brown became suspicious, inspected that area of the car, and found several packages of what turned out to be marijuana. CBP officers then searched the rest of Flores's car, where they discovered 16.44 kilograms (36.24 pounds) of marijuana.

Flores was indicted on one count of importation of marijuana in violation of 21 U.S.C. §§ 952 and 960.[1] Flores's first trial resulted in a hung jury. Upon retrial, a jury rendered a guilty verdict. The district judge imposed a two-level enhancement for obstruction of justice, but then substantially reduced her sentence in light of U.S.S.G. § 5K2.0 and the 18 U.S.C. § 3553(a) factors, ultimately imposing a term of incarceration of 12 months and one day in prison.[2]

Flores's defense rested on her lack of knowledge that her car was loaded with marijuana as she entered the United States. She testified that while she was in Tijuana on June 21,

---

[1] Section 952(a) provides: "It shall be unlawful . . . to import into the United States from any place outside thereof . . . any controlled substance in schedule I or II," including marijuana.

[2] The district court explained that by adding the extra day to Flores's sentence, she would be eligible for a reduction in the custodial portion of her sentence.

2012, she gave her car to a mechanic named Juan so that he could repair her air conditioning more cheaply than she could have it done in the United States. She suggested that Juan had hidden the marijuana in the quarter panels of her car while it was in the mechanic shop. Competing automotive experts testified about whether (1) Flores's air conditioning was in fact working on June 21; (2) Flores could have felt the weight and noise-dampening effect of the marijuana while she drove; and (3) car repairs were cheaper in Mexico.

The government noted Flores's failure to provide corroborating evidence that the repair work was done or that Juan even existed, and offered evidence of her behavior at the border and following her arrest as proof that she knew drugs were hidden in her car. The government also introduced two jail-recorded phone calls Flores made after her arrest. The first evidenced concern that her actions had hurt her family and the other was a request that her cousin delete "whatever [he] fe[lt] need[ed] to be taken off" of Flores's Facebook page. The latter call prompted the government to search her Facebook account for incriminating evidence. This search, in turn, led to two Facebook messages Flores had sent on June 21 referencing her "carrying" or "bringing" marijuana, which were introduced over Flores's objections and following the denial of her suppression motion.

Flores testified that the postings indicated only that she carried marijuana on June 21 from the United States into Mexico, not that she was about to smuggle marijuana from Mexico into the United States. In this appeal, she argues that the government committed misconduct by distorting her testimony in closing. For example, the prosecutor asked her, "so it's undisputed that on the day of your arrest, you definitely brought drugs *between* the United States and

Mexico" and "*across* the international border?"[3]   The prosecutor also asked Flores if it was "illegal" to bring marijuana into Mexico—a misleading question given that Flores was on trial for importation, not exportation.[4]  And, after emphasizing that Flores admitted to "smuggling drugs," the prosecutor argued during closing that Flores lied when she testified that the messages referred to exportation—not importation—of marijuana. Further, after acknowledging that Flores claimed she brought drugs to Mexico only, the prosecutor asserted, "[t]hat's still smuggling drugs"—a supposed crime that was not charged.  In her final line to the jury, the prosecutor emphasized: "She knows she was smuggling drugs on June 21st, 2012.  You heard her say that repeatedly and that's why she's guilty beyond a reasonable doubt."

In addition to claiming that the government engaged in prosecutorial misconduct, Flores argues on appeal that (1) the district court erred in denying her motion to suppress; (2) the district court abused its discretion by admitting Facebook messages and other unduly prejudicial evidence referencing Flores's marijuana use; and (3) the district court procedurally

---

[3] The prosecutor also asked Flores how often she brings "pot *between* the United States and Mexico," without specifying a direction of travel. At other points, the prosecutor accurately characterized Flores's testimony.  For example, the prosecutor asked: "So your testimony is you brought drugs from the United States to Mexico but not from Mexico into the United States?"; "Do you have an estimate of when you brought drugs from the United States into Mexico?"; and "You had driven drugs once again from the United States to Mexico."

[4] Technically, the answer to the government's question is, "Yes," as 21 U.S.C. § 953 criminalizes the exportation of a controlled substance. But Flores was indicted only for knowingly and intentionally *importing* marijuana, in violation of §§ 952 and 960.

erred in applying an obstruction of justice enhancement at sentencing.  We address Flores's arguments in turn.

## II.  PROSECUTORIAL MISCONDUCT

We review de novo whether any prosecutorial misconduct occurred. *See United States v. Weatherspoon*, 410 F.3d 1142, 1145–46 (9th Cir. 2005); *United States v. Ross*, 123 F.3d 1181, 1187 (9th Cir. 1997).  We then consider the effect of any misconduct to determine whether reversal is warranted. *See Weatherspoon*, 410 F.3d at 1150–51.  Where Flores objected at trial, we review for harmless error; where she did not, we review under the more deferential plain error standard. *See United States v. Ruiz*, 710 F.3d 1077, 1082 (9th Cir. 2013).

### A.  Misstating the Law and Facts

Flores contends that the government committed misconduct by erroneously telling the jury that it could convict her based on her admission to carrying marijuana to Mexico on the date of her arrest.  We agree that the government misstated the law to the jury. *See United States v. Berry*, 627 F.2d 193, 200 (9th Cir. 1980) ("A prosecutor should not misstate the law in closing argument.").  The government also misstated Flores's testimony, thereby making an unsupported factual claim. *See United States v. Kojayan*, 8 F.3d 1315, 1321 (9th Cir. 1993); *see also United States v. Mageno*, 762 F.3d 933, 943 (9th Cir. 2014), *vacated on other grounds*, 786 F.3d 768 (9th Cir. 2015).  Flores did not object to this misconduct below, however, so we review for plain error.  We conclude that the misstatements did not substantially prejudice her, and so do not warrant reversal. *See Ruiz*, 710 F.3d at 1082.

*1. The Prosecution's Impermissible Statements*

The government crossed the line between permissible commentary on Flores's testimony about her Facebook messages and that which we have long deemed impermissible. In a message dated June 21, 2012, Flores's friend asked if she "carried some pot," to which Flores responded, "yes."[5] In a second pair of June 21 messages, Flores says to a different friend, "come over and have a smoke" "of what I'm bringing."[6] Flores testified that these messages meant that she was bringing marijuana to Mexico and argued that they did not prove that she imported marijuana as charged. The government characterized these messages differently:

> You heard about some posts on [Flores's] Facebook account from June 21st 2012 when she said she was carrying marijuana and bringing marijuana. You know what she was carrying on June 21st 2012. She was carrying and bringing marijuana from Mexico into the United States in her car. She tried to convince you. She tried to explain this away. *She said, No. No. What I was doing was bringing marijuana from the United States of America into Mexico.*

---

[5] The Facebook postings are in Spanish, which the government translated for the jury. Flores translates the conversation differently, asserting that the question was, "Did you take weed."

[6] Flores also translates this conversation differently, asserting that the invitation was to "come so you can smoke out of what I have."

This argument reflects the government's apparent strategy for using the Facebook messages to convince the jury that Flores (1) admitted to carrying drugs across the U.S.-Mexico border, and (2) was lying about the direction she carried the drugs.

Both parts of this strategy are permissible. Prosecutors are free in argument to suggest that the jury draw reasonable inferences from the evidence presented at trial. *United States v. Sayetsitty*, 107 F.3d 1405, 1409 (9th Cir. 1997); *see also Mageno*, 762 F.3d at 943; *United States v. Molina*, 934 F.2d 1440, 1445 (9th Cir. 1991) (holding that prosecutors may argue that a defendant is lying). Here, there was more than enough evidence to support a reasonable inference that the Facebook messages actually meant that Flores was carrying drugs into the United States, rather than to Mexico as she testified. She was, in fact, carrying more than 36 pounds of marijuana in her car as she entered the United States on the very day she sent those messages. She then attempted to delete postings on her Facebook account from jail after the border patrol discovered the marijuana in her car.

Of course, the jury was free to believe Flores's explanation that the messages actually referenced exportation rather than importation, but the evidence adequately supported the government's characterization of them. Even if we were to accept that those messages conveyed a desire to smoke marijuana in Mexico, nothing in them rules out the possibility that Flores was offering her friends an opportunity to smoke some of the more than 36 pounds of marijuana she picked up in Mexico before she carried it back to the United States. The latter possibility is all the more plausible because when Flores was arrested, she was not carrying any marijuana other than that found hidden in her car. This evidence supports the permissible inference the government asked the

jury to draw—namely, that the Facebook messages referenced the very marijuana found in Flores's car.

This prosecutorial argument also accurately characterized Flores's insistence that she carried drugs to Mexico but not to the United States. So long as the government accurately recounted what Flores said—and in the statement quoted above, it did—the government was free to ask the jury to disbelieve Flores. Further, the argument accurately states the law by explaining that Flores is guilty because, regardless of her Facebook postings and what she testified about them, Flores brought drugs into the United States.

However, the government also strayed beyond the boundaries of permissible questioning and argument. The prosecutor repeatedly asserted that Flores had admitted to "drug smuggling." As a legal but irrelevant matter, Flores did admit to drug smuggling, *see* 21 U.S.C. § 960—just not the kind of drug smuggling with which she was charged, which the prosecutor had to know. Labeling Flores an "admitted drug smuggler" when she actually admitted to exportation required the government to walk a very fine line. It was "definitely improper" for the prosecutor to suggest that Flores admitted to "drug smuggling" when the prosecutor used the term as a synonym for importation because that misstated Flores's testimony. *See United States v. Kojayan*, 8 F.3d at 1321; *see also Mageno*, 762 F.3d at 943. At the same time, when loosely referencing "drug smuggling" to encompass exportation, the government could, without misstating testimony, assert that Flores admitted to drug smuggling. However, it was improper to use the "admission to drug smuggling" lingo in this loose manner when suggesting that such an admission was sufficient to warrant a conviction for the crime charged. Doing so misstates the law, because

Flores was not charged with exportation—the only form of drug smuggling to which she actually admitted.

The prosecutor improperly used the phrase "drug smuggling" as a synonym for importation frequently, from her opening statement through her last closing line to the jury. The government's arguments that Flores admitted to drug smuggling at trial were therefore misleading, if not outright false. These misstatements became flat falsehoods with the prosecutor's *coup de grace*: "She knows she was smuggling drugs on June 21st, 2012. You heard her say that repeatedly and *that's why she's guilty beyond a reasonable doubt*." The jurors knew this was an importation case, so the only way Flores's admission to "drug smuggling" would be a basis for finding her guilty beyond a reasonable doubt is if she had admitted to importation. Because she never made such an admission at trial, this statement falsely characterized Flores's testimony.

Moreover, to the extent that the prosecutor did not misrepresent Flores's testimony, she misstated the law. Flores admitted at trial to exportation. She therefore could be found guilty beyond a reasonable doubt based on this admission only if exportation were adequate to support a conviction. Because Flores was on trial for importation, however, the argument that knowingly exporting marijuana was sufficient to support a guilty verdict misstated the law.

The prosecutor also improperly invited the jury to convict Flores based on exportation rather than importation during cross-examination. After Flores admitted to carrying drugs into Mexico, the prosecutor asked, "That was illegal, wasn't it?" Similarly, in closing, the prosecutor acknowledged that Flores "claimed she had smuggled drugs from the United

States to Mexico," then asserted, "*[t]hat's still smuggling drugs*." These statements are not technically untrue, as exportation is drug smuggling and is illegal. By specifically emphasizing the illegality of exportation, however, the government suggested that even if the jury believed that Flores only exported drugs, she "still" acted illegally. In doing so, the prosecutor overstepped by inviting the jury to improperly convict Flores based on exportation.

The prosecutor made this worse by purposefully blurring and minimizing the distinction between importation and exportation. During cross-examination, the prosecutor asked whether Flores carried drugs "between" the United States and Mexico and "across" the border, without specifying a direction. In closing, the prosecutor then characterized a dispute over which direction the drugs traveled as a mere "quibble[]," minimizing the significance of that disputed fact. These statements, while again not untrue as an abstract legal matter, furthered the misimpression that the jury could convict Flores based on exportation.

The government should have been much more cautious in brandishing the potentially misleading label of "admitted drug smuggler." Had the government carefully and accurately used the term, it may have been able to avoid misstating the law or the facts. But the government was unable to do so, and in any event should not have tried to "push the envelope" in this manner. *Ruiz*, 710 F.3d at 1087 (Pregerson, J., concurring). As the Supreme Court has said, "[t]he United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose . . . interest . . . in a criminal prosecution is not that it shall win a case, but that justice shall be done." *Berger v. United States*, 295 U.S. 78, 88 (1935).

## 2. *Plain Error*

Flores failed to object to any of these improper statements, and must therefore show that the government's actions amounted to plain error. *See Ruiz*, 710 F.3d at 1082. Although there was error, and it was plain, Flores fails to demonstrate the prosecutor's improper statements affected her substantial rights or the fairness, integrity, or public reputation of the proceedings. *See Puckett v. United States*, 556 U.S. 129, 135 (2009); *see also United States v. Olano*, 507 U.S. 725, 734 (1993). In the context of the entire trial, the prosecution's misconduct was not likely to have affected the jury's ability to weigh the evidence fairly. *See United States v. Sanchez*, 659 F.3d 1252, 1257 (9th Cir. 2011).

Despite the prosecutor's best efforts, it was unlikely that the jury was actually confused about Flores's testimony or the elements of the charge of importation. On multiple occasions, during both cross-examination and closing arguments, the government did accurately, directly, and explicitly re-state Flores's testimony.[7] The defense also accurately reiterated Flores's testimony in closing.[8] The chorus of accurate characterizations of Flores's testimony

---

[7] For example, during cross-examination, the prosecutor asked: "So your testimony is you brought drugs from the United States to Mexico but not from Mexico into the United States?" In closing, the prosecutor noted that Flores "quibbled with the direction" in which the government argued the drugs traveled. Similarly, the prosecutor reminded the jury that Flores said, she "was bringing marijuana from the United States of America into Mexico," and "claimed she had smuggled drugs from the United States to Mexico."

[8] Defense counsel conceded that Flores "would sometimes bring marijuana to Mexico to smoke with her cousin."

likely drowned out the government's infrequent, indirect, and implicit misstatements of that testimony. Moreover, Flores's testimony was simple, unambiguous, and unmistakable.[9] Jury confusion was therefore unlikely.

It is also unlikely that the prosecution's misstatements of the law confused the jury about the elements of the charged offense. The prosecution did, on multiple occasions, clearly and directly state that importation was required to support a conviction. In closing, the prosecutor also correctly stated:

> You don't have to write this down, two elements. Defendant knew she brought marijuana from a place outside *into* a place *inside the United States* and second, she knew the substance she was bringing *into the United States* was marijuana or some other prohibited drug. Basically, the United States has to prove to you or has proven to you beyond a reasonable doubt that Ms. Flores [acted] knowingly—she wasn't dragged over the border, nobody dragged her over the border. She voluntarily drove her car from Mexico *into the United States*.

---

[9] The prosecutor asked Flores: "[O]n the day of your arrest, you were bringing marijuana between the United States and Mexico?" Flores responded: "Into Mexico." The prosecutor then asked: "[Y]ou definitely brought drugs between the United States and Mexico?" Flores again responded: "Not between. *Into Mexico.*"

During closing, the prosecutor argued at least sixteen times that Flores brought drugs *into* the United States.[10]  In other words, the government built its entire argument around a correct statement of a very simple law and repeatedly informed the jury in which direction Flores had to carry drugs to be found guilty.  Accordingly, it is unlikely that a rational jury would have concluded, based on a few misstatements of the law, that it could convict Flores regardless of which direction she carried drugs.

Further, the evidence against Flores was overwhelming. *See Berry*, 627 F.2d at 201.  Flores was found with more than 36 pounds of drugs in her car.  The government explained various ways in which Flores would have become aware that her car was loaded with marijuana.  Flores acted suspiciously at the border, drawing Officer Brown's attention to the drugs.

---

[10] The prosecutor said: "she brought drugs *in*;" "[s]he was completely surrounded by marijuana and coming *into the United States*;" "[s]he knew she had smuggled drugs *into the United States*;" "[d]efendant knew she brought marijuana from a place outside *into a place inside the United States*;" "[w]e also have proven to you beyond a reasonable doubt she knew there were drugs in her car [as she was entering the United States;]" "[s]he was carrying and bringing marijuana from Mexico *into the United States* in her car;" "[y]ou know the direction she was smuggling those drugs.  She was smuggling them from Mexico *into the United States*;" "[s]he was nervous . . . because she was surrounded by marijuana she was smuggling *into the United States*;" "[s]he did what anyone would do when they are nervous because of smuggling drugs *into the United States*;" "[s]he knew she was smuggling[] drugs *into the United States*;" "[she was] arrested . . . after smuggling[] drugs *into the United States*;" "[she was] hire[d] to bring the drugs *into the United States*;" "[s]he knew she smuggled drugs *into the United States*;"  "[s]he was ashamed . . . in that jail call because she knew she smuggled drugs *into the United States*;" "[she] smuggled drugs *into the United States*;" "[s]he is a drug smuggler who had someone put [the drugs] in [her car] for her so she could bring drugs *into the United States*."

In a recorded phone call from jail played for the jury, Flores expressed regret, not frustration or confusion, as one would expect if Juan had planted the drugs in Flores's car without her knowledge.[11]   She further implicated herself by asking Jose Manuel to destroy evidence from Facebook—evidence that was apparently so incriminating that Flores asked someone to delete it even though she knew her call was being recorded.[12]

Flores's story about Juan the mechanic—the only innocent explanation for the drugs found in Flores's car—was entirely uncorroborated and highly suspect, as the government pointed out to the jury.  Flores mentioned her visit to the dermatologist to Officer Brown at the border, and presented a host of evidence at trial to corroborate that aspect of her trip to Mexico.[13]   Yet she failed to mention her interaction with Juan to Officer Brown at the border and offered no evidence to prove that Juan did any repair work on

---

[11] In this call, Flores said to her boyfriend: "If you keep fucking around, that's not proving anything to me.  Do you want to be with me?  Do you want to change?  I fucking stepped foot in here and I asked myself, what the fuck?  Why would I do this to my family? . . . I'm not going to fucking set foot in here again."

[12] In this call, Flores asked Manuel, her cousin, to login to Flores's Facebook account, change the password, and "take off whatever you feel needs to be taken off."  Flores also warned Manuel that the call was being recorded.

[13] Flores identified her dermatologist as Dr. Juan R. Martinez Najera, produced a picture of his office, and introduced prescriptions written by Dr. Martinez for Flores on June 21, 2012.

her car, or that he even existed.[14]   The government's expert also testified that the air conditioner in Flores's car was not working in June of 2012, obviously suggesting that it had not been repaired by Juan in Tijuana.[15]   Further, Flores's cousin in Tijuana, whom Flores visited on the day of her arrest, was supposedly friends with Juan and presumably could have provided details about Juan to corroborate Flores's testimony. No such evidence was presented.  Nor did Flores attempt to explain why she had not taken even basic steps to locate Juan or corroborate her story after having gone to such lengths to confirm her trip to the dermatologist.  All of these facts are inconsistent with Flores's story that Juan the mechanic planted drugs in Flores's car without her knowledge, and no other innocent explanation was offered for how they got there.  Flores is correct that the evidence of her knowledge was circumstantial, but that circumstantial evidence was overwhelming.[16]

---

[14] Flores did not provide a last name, phone number, address, or business name for Juan the mechanic.  Unlike the dermatologist, she did not call Juan in advance to arrange for the repair work to be done on her car. Flores testified that she paid Juan $40, but she did not have a receipt for any repair work done by Juan in Tijuana.  She did, however, have multiple invoices from an auto body shop located in Garden Grove, California.

[15] The government's expert explained that the compressor in Flores's car—an essential component of an air conditioning system—was inoperable when he inspected it.  He further explained that if the compressor had been functional when Flores's car was impounded, it would have remained functional through the date of the inspection, as compressors do not "fail from just sitting" in an impound lot.

[16] In evaluating the strength of the evidence against her, Flores notes that the jury in her first trial could not reach a unanimous verdict.  But a jury's inability to reach a verdict could be attributed to many factors other than the closeness of the evidence.  That is particularly so in cases, like this,

Further mitigating the risk of prejudice, jury instructions correctly stating the law were read shortly after closing arguments, and thus shortly after the government's key misstatements.  As to the elements of the charge, the district court correctly instructed:

> In order for the defendant to be found guilty . . . , the government must prove each of the following elements beyond a reasonable doubt:
>
> First, the defendant knowingly brought marijuana *into the United States* from a place outside the United States; and
>
> Second, the defendant knew the substance she was bringing *into the United States* was marijuana . . . .

This instruction mirrored the prosecution's earlier correct statement of the law and again made the importance of importation abundantly clear.  The instructions also reiterated that "the defendant is charged in the indictment with unlawful *importation* of a controlled substance."  If the jury was at all misled by the prosecution's statements, which is doubtful, the

where the defendant seems sympathetic and lacked the wherewithal to act alone given the drug quantity and means of transport, and the charge involves a substance that has been legalized in some states.  Because we can only speculate about why the jury hung at the first trial, we place little weight on the first jury's inability to reach a verdict.  In evaluating the strength of the evidence, we look first and foremost to the evidence itself, rather than to the first jury's reaction to that evidence.  For the same reason, we place little stock in the fact that the second jury returned a guilty verdict shortly after deliberations began.

court's instructions very likely put the jury back on course. We presume the jury followed these instructions when determining whether Flores was guilty as charged. *See Weeks v. Angelone*, 528 U.S. 225, 234 (2000).

In sum, while the government misrepresented Flores's testimony and misstated the law on multiple occasions, in the context of the trial as a whole, it is unlikely that the jury was misled about the law or the facts. *See Berry*, 627 F.2d at 200. The evidence against Flores was overwhelming, *see id.* at 201, and the jury was correctly instructed. Accordingly, Flores cannot show that the government's misconduct rose to the level of plain error. *See Sanchez*, 659 F.3d at 1257.

## B. Vouching

"Improper vouching consists of placing the prestige of the government behind a witness through personal assurances of the witness's veracity, or suggesting that information not presented to the jury supports the witness's testimony." *Ruiz*, 710 F.3d at 1085. The government concedes that it improperly vouched for its automotive expert witness, Russ Butler, when the prosecutor stated, "I submit I would hire Russ Butler to work on my car rather than Forrest Folck [Flores's expert]. Russ is experienced." *See United States v. Kerr*, 981 F.2d 1050, 1053 (9th Cir. 1992). *But see Kojayan*, 8 F.3d at 1321 (explaining that the phrase "I submit" signaled a request for the jury to draw a reasonable inference). Flores did not object to this misconduct at trial, so we review for

plain error.[17]   *See Ruiz*, 710 F.3d at 1082.   To determine whether vouching caused substantial prejudice, we consider:

> the form of vouching; how much the vouching implies that the prosecutor has extra-record knowledge of or the capacity to monitor the witness's truthfulness; any inference that the court is monitoring the witness's veracity; the degree of personal opinion asserted; the timing of the vouching; the extent to which the witness's credibility was attacked; the specificity and timing of a curative instruction; the importance of the witness's testimony and the vouching to the case overall.

*Id.* at 1085; *see also United States v. Williams*, 989 F.2d 1061, 1072 (9th Cir. 1993).   Considering these factors, we conclude that the government's vouching did not substantially prejudice Flores.

Unlike in cases where we have found vouching prejudicial, the vouching here was not crucial to the government's case.   *See Kerr* 981 F.2d at 1052–54 (citing multiple instances of vouching and explaining that the testimony of the vouched-for witnesses was crucial to the government's case).   Even if the jury believed the defense expert's testimony that Flores's air conditioner was working on June 21, 2012, this would do little to bolster Flores's story about Juan the mechanic.   That an air conditioner works on a

---

[17] The government does not rely on *Kojayan* and concedes error.   We assume without deciding that the error was clear or obvious for purposes of our plain error analysis.

particular day says nothing about who fixed it, where it was fixed, or whether it was broken in the first place.

Moreover, the attack on Folck's credibility was minimal and involved a single improper statement. *See United States v. Younger*, 398 F.3d 1179, 1190 (9th Cir. 2005) (holding that a single improper statement did not materially affect the verdict). Nor did the vouching imply extra-record knowledge or the ability to monitor the witness's truthfulness. *See Ruiz*, 710 F.3d at 1085. And the vouching did not function as a government-backed assurance of Flores's guilt. At worst, the vouching simply reiterated the primary inference the government asked the jury to draw all along—that Flores's story about Juan the mechanic was not credible. *See Williams*, 989 F.2d at 1072 ("[V]ouching here functioned mainly as rhetorical emphasis for the inferences the prosecutor was urging the jury to draw rather than a meaningful personal assurance that the defendants were guilty.").

Because of the "substantial evidence supporting the jury's verdict" and the minor role vouching played in the prosecutor's case, *id.*, Flores fails to show that the vouching caused "substantial prejudice," *Ruiz*, 710 F.3d at 1084–85.

## C. Shifting and Undermining the Burden of Proof

Flores next contends that the government improperly (1) shifted the burden of proof by pointing out that she failed to produce evidence to corroborate her story about Juan the mechanic and (2) undermined the burden of proof by asking the jury to evaluate the government's "very reasonable" story and Flores's "preposterous" story "in the same way." *See United States v. Evanston*, 651 F.3d 1080, 1091–92 (9th Cir.

2011) ("It is beyond comment that the government bears the burden of proving the defendant's guilt beyond a reasonable doubt at trial."). These statements were not improper.

While Flores is correct that the government referred to its theory as "very reasonable" and Flores's defense as "crazy" and "preposterous," the government never argued that these conclusions, or Flores's failure to corroborate her story about Juan, alone were sufficient to support a conviction. And the government explicitly stated more than a half dozen times that it bore the burden of proving Flores guilty beyond a reasonable doubt. Highlighting the weakness of a defense, characterizing it as incredible, and noting the defendant's failure to produce evidence is not improper, particularly where the government correctly states the burden of proof. *See Ruiz*, 710 F.3d at 1086–87 (referring to the defense as "smoke and mirrors" is permissible); *United States v. Tucker*, 641 F.3d 1110, 1120–21 (9th Cir. 2011) (highlighting flaws in the defense is permissible); *United States v. Necoechea*, 986 F.2d 1273, 1282 (9th Cir. 1993) (noting the defense's failure to present evidence in support of its theory is permissible); *Molina*, 934 F.2d at 1445 (arguing that the defendant is a liar is permissible).

### D.  The Government's Statements about Flores

Because Flores testified, the prosecutor's comments on her demeanor were permissible.[18]  *See Allen v. Woodford*, 395 F.3d 979, 997 (9th Cir. 2005) ("The prosecutor's comments regarding [the defendant's] courtroom demeanor were permissible because [the defendant] chose to testify.");

---

[18] In closing, the prosecutor said to the jury: "You saw her sitting there the entire trial.  Her hands weren't shaking while she was there."

*United States v. Schuler*, 813 F.2d 978, 981 n.3 (9th Cir. 1987).

Flores also argues that the government impermissibly called Flores a drug smuggler, a liar, and "not law abiding." However, when the prosecutor called Flores a drug smuggler and a liar, she was not making impermissible propensity arguments.   Instead, she was arguing that when Flores admitted to smuggling drugs on June 21, 2012, she admitted to the instant offense and that she was lying when she claimed she only took drugs to Mexico.  Such statements are permissible to the extent that they were not misstatements of fact or law.  *See Molina*, 934 F.2d at 1445 (holding that the prosecution may call the defendant a liar if that is one of the inferences supported by the evidence); *Sayetsitty*, 107 F.3d at 1409 (holding that the prosecution may ask the jury to draw reasonable inferences); *Necoechea*, 986 F.2d at 1282 (noting that the government may argue that a defendant charged with drug dealing is a "dope dealer").

And the prosecutor's assertion that Flores was not law-abiding was a permissible rebuttal to Flores's closing argument.   Flores's attorney attempted to explain why Flores's effort to delete her Facebook messages was not necessarily a sign of guilt.  Defense counsel told the jury a childhood story in which he attempted to hide evidence potentially suggesting that he cheated on a test even though he had not actually cheated.  The prosecutor's argument that Flores was not law-abiding was offered to distinguish the defense attorney's situation from Flores's.  Flores admitted that she asked Manuel to delete content because she feared there was a picture of her smoking marijuana.  While the evidence Flores's attorney destroyed as a child was entirely innocent (and might have exonerated him), the evidence

Flores asked her cousin to destroy was undoubtedly indicative of criminal activity—the only question was which crime Flores was trying to cover up, simple possession, exportation, or importation. The government merely pointed out that, unlike her attorney, Flores was trying to hide evidence of wrongdoing. Placed in this context, the argument was proper rebuttal.

## E.  Cumulative Error

Flores contends that, because the prosecution committed multiple errors, we should not conduct "a balkanized, issue-by-issue harmless error review." *United States v. Frederick*, 78 F.3d 1370, 1381 (9th Cir. 1996). We agree that we must consider the cumulative effect of the errors, if any. However, Flores did not object to any of the prosecution's conduct that we find improper, so we review for plain error, not harmless error as Flores suggests.

In the context of the trial as a whole, the jury was unlikely to misunderstand Flores's testimony or the law, and it is unlikely that the jury's deliberations were affected by the prosecutor's submission that she would hire Russ Butler rather than Forrest Folck. Considering the errors together does nothing to change these conclusions. Adding to Butler's credibility would not have increased the likelihood that the jury misunderstood the law or Flores's testimony, just as misunderstanding the law or Flores's testimony would not have altered the jury's assessment of the experts' credibility. The likelihood that the errors affected the jurors' deliberations was simply too low to constitute plain error. Further, because the evidence against Flores was overwhelming, she was less likely prejudiced by the effect of cumulative errors. *See United States v. Wallace*, 848 F.2d

1464, 1475–76 (9th Cir. 1988). Thus, whether viewed individually or cumulatively, the prosecution's improper statements do not warrant reversal.

## III.  EVIDENTIARY CLAIMS

Flores argues that the district court erred in denying her motion to suppress evidence obtained from her Facebook account. She further argues that the district court abused its discretion by admitting evidence of her personal drug use at trial. We disagree.

### A.  Denial of Flores's Motion to Suppress Facebook Evidence

We review the denial of a motion to suppress de novo and the district court's findings of fact for clear error. *United States v. Camacho*, 368 F.3d 1182, 1183 (9th Cir. 2004). Flores contends that the district court erred because (1) the warrant to search her Facebook account was not supported by probable cause and was stale; (2) the warrant was overbroad; and (3) the search exceeded the scope of the warrant. We reject each argument in turn.

### 1.  Probable Cause and Staleness

Probable cause is established if an affidavit presents a "fair probability" that evidence of criminal activity will be found in the place to be searched. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). We "give[] 'great deference' to an issuing judge's finding that probable cause supports the warrant" and review for clear error. *United States v. Grant*, 682 F.3d 827, 832 (9th Cir. 2012). We will not find a search warrant invalid so long as the issuing judge had a substantial basis for

concluding that the supporting affidavit established probable cause. *United States v. Crews*, 502 F.3d 1130, 1135 (9th Cir. 2007).

Special Agent Enriquez's affidavit supporting the warrant established probable cause to search Flores's Facebook account, at least for some period of time, considering Flores called Jose Manuel from jail and asked him to purge her account. That request, along with Flores's warning that the call was being recorded and the close proximity of the call to her arrest, supported more than a "fair probability" that agents would find evidence of drug smuggling or a smuggling conspiracy in Flores's account. *Id.*

Flores argues, however, that even if there was probable cause on June 21, 2012, after she called Manuel, there was no longer probable cause when the warrant issued more than three months later, on October 2, 2012. *See Grant*, 682 F.3d at 835 (explaining that an otherwise sufficient warrant application may become stale absent "a continuing pattern or other good reasons" suggesting that evidence remains in the location to be searched); *United States v. Gann*, 732 F.2d 714, 722 (9th Cir. 1984). Contrary to Flores's argument, there are many reasons to believe that there remained a "fair probability" of finding evidence of drug smuggling in her account when the warrant issued.

The mere passage "of substantial amounts of time is not controlling in a question of staleness." *United States v. Dozier*, 844 F.2d 701, 707 (9th Cir. 1988). That is particularly true with electronic evidence. "Thanks to the long memory of computers, any evidence of a crime was almost certainly still on [the defendant's] computer, *even if he had tried to delete the images*." *United States v. Gourde*, 440

F.3d 1065, 1071 (9th Cir. 2006) (en banc) (emphasis added). Because any evidence that might have been in Flores's account on June 21, 2012 may not have been deleted and likely could have been recovered even if it had been deleted, there remained a fair probability that Flores's account would contain evidence of drug smuggling on October 2, 2012.

Flores counters by noting that the government sought to file the warrant under seal precisely because anyone with even basic computer skills could permanently delete Facebook content. This argument disregards the fact that, on August 27, 2012, Special Agent Enriquez submitted a preservation request to Facebook for Flores's account,[19] which proved effective.[20]  Further, asserting that there is a genuine risk that evidence might be permanently deleted in the future, as Enriquez did in support of his request to seal the warrant, is not the same as conceding that there is no longer a fair probability that the evidence still exists (or is recoverable). *See Gourde*, 440 F.3d at 1065, 1071. Probable cause determinations are "commonsense, practical" questions, and a "fair probability" is less even than a preponderance of the evidence. *Id.* at 1069. In this day and age, even persons with minimal technological savvy are

---

[19] Agent Enriquez did not mention the preservation request in his affidavit. He did, however, refer to "recovered data," and he mentioned that it was "very likely . . . that evidence of the crimes under investigation exists on computers subject to the control of" Facebook.

[20] In addition to the preservation request and the inherent difficulty of irretrievably deleting digital data, a Facebook security setting also ensured that the contents of Flores's account remained accessible. Anyone logging in to Flores's account from an unknown computer had to enter a password that was sent to Flores's cell phone. Flores's phone had been confiscated, so Manuel was unable to login to Flores's account.

aware that data is frequently preserved and recovered after deletion from an electronic device, particularly when a third party like Facebook is involved. *See id.* at 1071. Therefore, even if agents were less likely to find evidence of drug smuggling in Flores's account in October than in June, a fair probability of finding such evidence remained when the warrant issued.

## 2. Overbreadth

Flores next argues that the warrant was overbroad. We consider three factors in analyzing the breadth of a warrant:

> (1) whether probable cause existed to seize all items of a category described in the warrant; (2) whether the warrant set forth objective standards by which executing officers could differentiate items subject to seizure from those which were not; and (3) whether the government could have described the items more particularly in light of the information available . . . .

*United States v. Lei Shi*, 525 F.3d 709, 731–32 (9th Cir. 2008).

The first two factors clearly suggest that the warrant was not overbroad. The warrant allowed the government to search only the Facebook account associated with Flores's name and email address, and authorized the government to seize only evidence of violations of 18 U.S.C. § 371 (Conspiracy) and 21 U.S.C. §§ 952 and 960 (Importation of

a Controlled Substance).[21] The warrant also established "Procedures For Electronically Stored Information," providing executing officers with sufficient "objective standards" for segregating responsive material from the rest of Flores's account. *See Lei Shi*, 525 F.3d at 731–32.

Citing *United States v. Comprehensive Drug Testing, Inc.*, 621 F.3d 1162 (9th Cir. 2010) (en banc) (per curiam) ("*CDT*"), Flores argues that the objective standards used here were unconstitutional. At bottom, Flores complains that the government, including the investigative team itself, was authorized to seize and search all 11,000 pages of data in Flores's account when, as it turned out, only approximately 100 pages were truly responsive to the warrant. In *United States v. Adjani*, we rejected a similar argument that the government should have narrowed its search of a defendant's e-mail account. *See* 452 F.3d 1140, 1149–50 (9th Cir. 2006) ("To require such a pinpointed computer search, restricting the search to an email program or to specific search terms, would likely have failed to cast a sufficiently wide net to capture the evidence sought."). "Over-seizing" is an accepted reality in electronic searching because "[t]here is no way to be sure exactly what an electronic file contains without somehow examining its contents." *CDT*, 621 F.3d at 1176, 1177.

That said, we have recognized a number of significant limitations to prevent necessary "over-seizing" from turning into a general dragnet. In *Adjani*, we explained that warrants

---

[21] Flores argues that the warrant authorized agents to search for and seize evidence tending to prove a conspiracy to commit *any* crime. She misreads the warrant, which extended only to content "tending to show narcotics trafficking."

must specify the particular crime for which evidence is sought. 452 F.3d at 1148–50. We also cautioned in *CDT* against retaining unresponsive data based on the "plain view" doctrine, and recognized the importance of protecting third parties' rights. 621 F.3d at 1169–71. Consistent with this guidance, the warrant here specified a crime and a suspect, the seized data was not used for any broader investigative purposes, and Facebook, rather than government agents, segregated Flores's account to protect third parties' rights.[22]

Flores claims that the third *Lei Shi* factor—whether the government could have placed greater limits on the warrant's scope in light of available information, 525 F.3d at 732—cuts in favor of finding the warrant overbroad. In particular, she notes the warrant contained no temporal limit. As it turns out, Flores's Facebook account contained activity dating back to when she was 17 or 18 years old, and she committed the

---

[22] We recognize that the warrant authorized retention of Flores's full account for authentication purposes, a process we disapproved in *United States v. Tamura*, 694 F.2d 591, 597 (9th Cir. 1982). *Tamura* presented very different concerns, however, because the documents retained in that case were a company's physical "master volumes" rather than a copy of digital data. Nevertheless, *CDT* reaffirmed the importance of returning (or destroying) copies of digital data. *See* 621 F.3d at 1170; *id.* at 1179 (Kozinski, C.J., concurring). But *CDT* allowed for retention with "specific judicial authorization," which the warrant here included. *See id.* We also note that "any authorized federal agent" was allowed to search within Flores's account for responsive data. Ideally, the government's investigative team would not have been involved in segregating responsive data from the rest of Flores's account. *See id.* at 1168, 1172 (Majority Op.). *CDT* did not prohibit investigative teams from participating in data segregation as a general matter, however, and instead faulted the government for misleadingly suggesting in the warrant that the team would not be involved. *Id.* at 1172. *CDT* thus serves as a reminder not to mislead magistrates or exceed the scope of a warrant, not as a blanket prohibition on data segregation by investigative teams.

offense of conviction shortly after turning 23 years old.[23] Seizing five or six years' worth of data may have been excessive, though Agent Enriquez's affidavit certainly established probable cause to search Flores's account for some time before her arrest.

Ultimately, we need not decide whether the warrant was overbroad for lack of a temporal limit because even if it was, suppression of the evidence used at trial was not required. We have "embraced the doctrine of severance, which allows us to strike from a warrant those portions that are invalid and preserve those portions that satisfy the Fourth Amendment. Only those articles seized pursuant to the invalid portions need be suppressed." *United States v. Gomez-Soto*, 723 F.2d 649, 654 (9th Cir. 1984). No evidence was introduced at trial that should have been suppressed under this standard, regardless of the warrant's potential overbreadth. Indeed, the two sets of Facebook messages introduced at trial were sent on the day of Flores's arrest and thus fell well-within even the narrowest of temporal limits. Therefore, even though the warrant had no temporal limit, the district court did not err in denying Flores's motion to suppress. *See Gomez-Soto*, 723 F.2d at 654.[24]

---

[23] In her motion in limine, Flores exaggerated the scope of the problem. She claimed that the government seized data from as early as 2000. Flores testified, however, that she joined Facebook when she was 17 or 18 years old, which means that no data existed prior to 2006 or 2007, given that Flores was born in 1989.

[24] Because we conclude that the evidence used at trial was seized pursuant to the valid portion of the warrant and that the motion to suppress was therefore properly denied, we need not address the government's additional argument that the "good faith" exception to the exclusionary rule applies.

## 3. *Executing the Warrant*

Flores further argues that the Facebook evidence presented at trial should have been suppressed because the government exceeded its scope by seizing all 11,000 pages of data in Flores's account. Pursuant to the terms of the warrant, however, Facebook was authorized to provide agents with a copy of the entire contents of Flores's account. Agents then segregated 100 pages of responsive material from the entire account into a separate file within the 90-day period authorized by the warrant.[25] Again pursuant to the warrant, the original copy of Flores's account was sealed in an evidence bag and is inaccessible absent a new warrant.[26] In short, the government executed the warrant exactly as it was written.

We need not determine whether the 100 pages of segregated data exceeded the scope of the warrant, as Flores claims, because only two messages were admitted into evidence. In *United States v. Crozier*, we held that "[o]nly those items which fall outside the scope of the warrant need be suppressed." 777 F.2d 1376, 1381 (9th Cir. 1985). Accordingly, the district court properly considered only the

---

[25] Flores also claims that the government exceeded the scope of the warrant by refusing to enlist Facebook in this data segregation. Flores's claim fails because the warrant explicitly authorized the government to perform this task and because the affidavit thoroughly explained why Facebook could not be assigned to find responsive materials in Flores's account. *See CDT*, 621 F.3d at 1170–71; *Tamura*, 694 F.2d at 595.

[26] In addition to the sealed copy retained for authentication purposes, the government made three working copies of Flores's account and gave one copy to the defense, one to the prosecution, and one to the case agent. The latter two copies have been destroyed.

Facebook messages the government planned to introduce at trial. Those messages were well-within the scope of the warrant. Thus, even if other evidence that was not introduced at trial might have exceeded the warrant's scope—and there is no reason to believe that it did—the district court did not err in denying Flores's motion to suppress.

## B. Admissibility of Evidence from Facebook

After the district court denied Flores's motion to suppress, Flores moved in limine to exclude any evidence referring to her personal drug use, arguing that references to personal drug use were inadmissible propensity evidence under Federal Rule of Evidence 404(b) and unfairly prejudicial under Rule 403. The district court denied her motion and overruled her Rule 403 and 404 objections at trial. We review the denial of Flores's motion and the rejection of her objections for abuse of discretion. *See United States v. Curtin*, 489 F.3d 935, 943 (9th Cir. 2007) (en banc).

Flores contends that the two Facebook messages the government introduced were improperly used for propensity purposes and were unfairly prejudicial—concerns which were improperly compounded by the admission of evidence that Flores also used marijuana during her pretrial release period. Flores is correct that drug use and simple possession cannot be introduced to show that a defendant conspired to smuggle drugs. *See United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1015 (9th Cir. 1995) (noting that possession of personal use amounts of a drug does not evidence conspiracy to manufacture that drug); *United States v. Mehrmanesh*, 689 F.2d 822, 831–32 (9th Cir. 1982) (rejecting the argument that a jury can infer importation from drug use). She is incorrect that the evidence was inadmissible, however,

because the government used the evidence for different, permissible purposes.

The evidence supported a reasonable inference that the Facebook messages referred to the very drugs Flores was arrested for transporting. Thus, the messages were at least arguably tantamount to admissions to the crime charged. Accordingly, Rule 404(b) is inapplicable because the evidence did not refer to *other* bad acts at all; it referred to *the* bad act at issue. *See United States v. Rizk*, 660 F.3d 1125, 1131 (9th Cir. 2011). Indeed, it would have been illogical for the government to use the messages for propensity purposes, as that would have bolstered Flores's claim that the messages referred to *other* uncharged bad acts, whereas the government's argument depended in part on convincing the jury that the messages referred to *the* importation with which Flores was charged. Thus, the district court's decision to admit the evidence as a potential admission was not an abuse of discretion because the government's characterization of the messages was supported by "inferences that may be drawn from facts in the record." *Redlightning*, 624 F.3d at 1110. That Flores presented a competing plausible characterization of the Facebook messages goes to the weight of the evidence, not its admissibility. Nor did the district court abuse its discretion under Rule 403 because the prejudice created by an admission, while severe, is not unfair. *See United States v. Hankey*, 203 F.3d 1160, 1172 (9th Cir. 2000).

Allowing the government to use the messages for non-propensity impeachment purposes—i.e., to show that Flores was lying about what she wanted her cousin to delete from Facebook—was not an abuse of discretion. The same is true of the government's reference to Flores's pre-trial drug use, which was introduced to show that Flores had lied to a federal

judge and thus was untrustworthy, rather than to show Flores's propensity to commit drug crimes. Moreover, the court explicitly instructed the jury that it could not consider evidence of Flores's other wrongful acts "as evidence of guilt of the crime for which the defendant is now on trial." Because the evidence was used for permissible purposes only, the district court did not abuse its discretion in denying Flores's motion in limine or overruling her objections. *See United States v. Castillo*, 181 F.3d 1129, 1134 (9th Cir. 1999) ("[U]nless the evidence of other acts only tends to prove propensity, it is admissible.").

## IV.  SENTENCING

We review a district court's construction and interpretation of the Sentencing Guidelines de novo, its factual findings for clear error, and its application of the Guidelines to the facts for abuse of discretion. *United States v. Taylor*, 749 F.3d 842, 845 (9th Cir. 2014); *United States v. Popov*, 742 F.3d 911, 914 (9th Cir. 2014). Flores argues that the district court procedurally erred by applying a 2-level obstruction of justice enhancement under U.S.S.G. § 3C1.1 without making the requisite willfulness and materiality findings. *See* U.S.S.G. § 3C1.1 cmt. 4(D). We disagree.

Flores is correct that the enhancement can be based only on willful efforts to delete evidence that are material to "the *instant offense of conviction*," U.S.S.G. § 3C1.1 (emphasis added)—importation of marijuana. *See United States v. Gardner*, 988 F.2d 82, 83 (9th Cir. 1993) (per curiam). Contrary to Flores's claim, however, the district court found Flores asked her cousin to delete Facebook content that, "if believed, would tend to influence or affect" the importation charge itself. U.S.S.G. § 3C1.1 cmt. n.6 (defining

materiality). Indeed, the district court allowed the government to introduce this evidence at trial over Flores's objections precisely because the court concluded that, if the jury believed the government's characterization of the evidence, it would directly prove Flores knew there was marijuana in her car as she entered the United States. The court's evidentiary ruling therefore encompasses the requisite materiality finding. *Cf. United States v. Armstrong*, 620 F.3d 1172, 1176 (9th Cir. 2010) ("Although it is preferable for the court to make a separate and clear finding . . . , doing so is unnecessary where the court makes a determination of an obstruction of justice enhancement that encompasses all of the factual predicates for [such] a finding . . . .").

Flores also asserted at sentencing that she asked Manuel to delete Facebook content because "[s]he didn't want the prosecutors to assume that she had knowledge [of the drugs in her car] simply because she herself had smoked marijuana in the past."[27] Thus, Flores affirmatively stated at sentencing

---

[27] Flores had stated this fear earlier in her testimony, as well. When asked why she wanted Manuel to delete references to her marijuana use from Facebook, Flores said, "For however long I had been smoking, people they just pass judgment immediately. I don't know, I guess they think badly of somebody who smokes marijuana . . . . I knew that that was something I could get in trouble for." On cross-examination, she confirmed that she wanted the evidence deleted because of "the judgment that people pass on anyone who smokes marijuana," and because "I didn't want it to be *used as evidence* in [a] case it was irrelevant to." Essentially, Flores was worried that evidence of her marijuana use might (1) support a character inference that in turn would cause the government to prosecute (and the jury to convict) her for importation, and (2) suggest that she knew that drugs were hidden in her car as she entered the United States. While Flores's concerns might warrant exclusion of this evidence in an importation case under Federal Rules of Evidence 404(b) and 403, a defendant cannot avoid an obstruction enhancement by claiming that the

that she attempted to delete content from Facebook for the purpose of hindering the investigation and prosecution of "the instant offense of conviction." U.S.S.G. § 3C1.1; *see Gardner*, 988 F.2d at 83–84 ("[A] section 3C1.1 enhancement must be premised on willful conduct that has the purpose of obstructing justice."). Accordingly, the district court's imposition of the enhancement based on Flores's "efforts to have her cousin delete certain postings from her Facebook account" and "for the reasons stated," was a finding of the essential elements of obstruction under § 3C1.1. *Gardner*, 988 F.2d at 83–84 ("[T]he district court need not specify the reasons for its factual finding of obstruction of justice.").

Flores's own testimony establishes that this factual finding—that Flores asked Manuel to delete content from Facebook for the purpose of eliminating evidence that might tend to prove the crime charged—was not clearly erroneous. Therefore, we affirm her sentence.

## V. CONCLUSION

Once again, an Assistant United States Attorney for the Southern District of California overstepped the boundaries of permissible questioning and argument. We reluctantly affirm

---

evidence she tried to destroy might have been inadmissible—that is not a defendant's decision to make. Obstruction enhancements are not reserved for the willful destruction of *admissible* evidence only, and in any event, the evidence Flores attempted to destroy was admissible for non-propensity purposes. More importantly, Flores's testimony confirms that when she asked Manuel to delete content from Facebook, she knew it could be used against her in a prosecution for importation, and she attempted to destroy it for that reason.

Flores's conviction under the high bar of the plain error standard.

**AFFIRMED.**

___

PREGERSON, Circuit Judge, dissenting:

I respectfully dissent. The Assistant U.S. Attorney violated the rules of permissible questioning and argument; forgot that our government's interest "in a criminal prosecution is not that it shall win . . . , but that justice shall be done," *Berger v. United States*, 295 U.S. 78, 88 (1935) (Sutherland, J.); and ignored Justice Sutherland's admonition that a prosecutor "may strike hard blows, but not foul ones." *Id*.

These serious violations do not warrant invocation of the plain error rule.