**NOT FOR PUBLICATION**


UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 20-10421 |
| Plaintiff-Appellee, | D.C. Nos. 4:18-cr-01309-RM-LAB-2 4:18-cr-01309-RM-LAB |
| v. | |
| RICHARD A. MADRIL, | MEMORANDUM* |
| Defendant-Appellant. | |

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 21-10208 |
| Plaintiff-Appellee, | D.C. No. 4:18-cr-01309-RM-LAB-2 |
| v. | |
| RICHARD A. MADRIL, | |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the District of Arizona
Rosemary Márquez, District Judge, Presiding

Argued and Submitted May 10, 2022
Pasadena, California

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Before: McKEOWN and IKUTA, Circuit Judges, and DANIELS,[**] District Judge.

Richard Madril appeals his conviction for conspiracy under 18 U.S.C. § 371 following a trial, and the district court's restitution order. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

I

Madril and his wife, Marivel Cantu-Madril, former attorneys who practiced immigration and criminal law together in Arizona, were alleged to have carried out a conspiracy from 2012 to 2018 through, among other things, falsely advising their clients that they were eligible for privileges and benefits from the federal government.[1] Although the couple was tried together, this appeal concerns only Madril's conviction and restitution order.[2]

During the trial, the government presented the testimony of several of Madril's and Cantu-Madril's former clients. One client, Juan Ordonez-Leon, testified that Madril and Cantu-Madril led him to believe that his immigration

---

[**] The Honorable George B. Daniels, United States District Judge for the Southern District of New York, sitting by designation.

[1] At some point during the conspiracy period, Cantu-Madril was suspended from the practice of law for filing frivolous appeals.

[2] Madril does not appeal the district court's denial of his motion for a new trial.

proceedings had been canceled and told him not to appear for a scheduled hearing. Madril nevertheless appeared at the hearing on Ordonez-Leon's behalf, and falsely told the immigration judge that his client wished to withdraw his application for asylum. Ordonez-Leon subsequently determined that the documents provided by Madril and Cantu-Madril, supposedly showing his proceedings had been canceled, were fraudulent. Another client, Francisco Pinon-Navarro, testified that Madril assisted Cantu-Madril in deceiving him about the status of his immigration proceedings. According to Pinon-Navarro, Madril impersonated an immigration official over the phone and told him than an immigration interview had been cancelled.

In addition to this testimony, the government presented false documents (including documents with forged signatures of federal court personnel or counterfeit seals of federal agencies) that had been seized from Madril's and Cantu-Madril's office. The false documents were found in both defendants' work spaces.

At trial, Madril introduced evidence and witnesses intended to impeach the credibility of the government's witnesses. His witnesses included a court employee who contradicted Ordonez-Leon's testimony that there had been a heated argument between Madril and Ordonez-Leon outside of the immigration

3

courtroom. They also included an employee of Madril's law firm, who testified that he (rather than Madril) had impersonated an immigration official on the phone to Pinon-Navarro.

Madril also took the stand to assert his innocence. Madril argued that he had acted as a reasonable attorney would under the circumstances, and was unaware of any fraud being perpetrated on his clients by others.[3] In response to this theory, the prosecutor cross-examined Madril about his ethical obligations as an attorney. Madril conceded that in 2018 he was the only licensed attorney for Ordonez-Leon because Cantu-Madril had been suspended from practicing law, and so he was solely responsible for Ordonez-Leon's representation. He also conceded that he had a duty as an attorney to communicate effectively with his clients, to act in his clients' best interest, and to obtain his clients' informed consent for important case decisions. Madril did not object to this line of questioning.

Prior to closing argument, the district court instructed the jury that "you may have to decide which testimony to believe and which testimony not to believe . . . . What is important is how believable the witnesses were and how much weight you think their testimony deserves." The court further instructed the jury

---

[3] Madril's counsel first expressed this theory in his opening statement, where he stated: "You're not going to hear any testimony that Mr. Madril did anything other than do things that attorneys do on a normal or regular basis for colleagues."

4

that "questions, statements, objections, and arguments by the lawyers are not evidence. The lawyers are not witnesses."

During the government's closing argument, the prosecutor addressed the conflicting testimony between Madril and his clients. The following exchange took place (emphasis added):

**Prosecutor**: And as you just heard a few minutes ago, the Judge instructed you about how to judge the believability or the truthfulness of a witness. *I submit to you that the victims in this case were extremely truthful and their testimony was very compelling.*
**Defense Counsel**: Objection, your Honor.
**Court**: Sustained.
**Defense Counsel**: Thank you.
**Prosecutor**: Let's discuss the victims' testimony. You got to see them with your own eyes, hear them with your own eyes, and judge them for yourselves, and *I submit to you that they were forthright, they were straightforward—*
**Defense Counsel**: Objection, Your Honor.
**Court**: Counsel, I'll see you at sidebar. (At sidebar.)
**Court**: I sustained the objection as to vouching for their truthfulness to the jury.

No party requested that a curative instruction be given following this exchange, and the court did not sua sponte give such an instruction.

In closing, the prosecutor argued that: "it was [Madril's] responsibility to act in the best interest of his client, be truthful to his client, and he said if Ordonez-Leon got any documents that day, it was his responsibility because he was the

5

lawyer; so that's more evidence of Richard Madril's involvement in the conspiracy." Madril did not object to these statements.

The jury returned a verdict convicting Madril and Cantu-Madril of conspiracy in violation of § 371, and convicted Cantu-Madril of two counts of forgery of judicial signatures and three counts of possession of counterfeit seals. The jury acquitted Cantu-Madril of mail fraud.

## II

On appeal, Madril argues that the prosecutor committed misconduct by vouching for government witnesses during closing argument, and by pursuing a line of questions regarding Madril's failure to obey state ethical rules for lawyers. We consider his arguments in turn.

## A

Madril first argues that the prosecutor engaged in prosecutorial misconduct during closing argument when he stated "I submit to you that the victims in this case were extremely truthful and their testimony was very compelling," and " I submit to you that [the victims] were forthright, they were straightforward." Madril contends that these statements were improper vouching, and that such prosecutorial misconduct necessitates a reversal. We review alleged vouching for harmless error when the defendant objected at trial. *See United States v. Stinson*,

6

647 F.3d 1196, 1211 (9th Cir. 2011); *see also United States v. Roberts*, 618 F.2d 530, 534 (9th Cir. 1980).

"Analysis of a claim of prosecutorial misconduct focuses on its asserted impropriety and substantial prejudicial effect." *United States v. Weatherspoon*, 410 F.3d 1142, 1145 (9th Cir. 2005). In analyzing a claim that the prosecutor engaged in misconduct due to vouching, we first determine "whether the prosecutor made improper statements during the course of the trial," and then "turn to the effect of any such misconduct." *Id.* at 1146.

"Vouching consists of placing the prestige of the government behind a witness through personal assurances of the witness's veracity, or suggesting that information not presented to the jury supports the witness's testimony." *United States v. Necoechea*, 986 F.2d 1273, 1276 (9th Cir. 1993). A prosecutor's statements are improper when (1) a prosecutor makes a reference to extra-record facts in assessing the witness's credibility, (2) implies that the government is monitoring the truthfulness of the witness, or (3) makes a personal guarantee of a witness's credibility. *Id.*; *see also United States v. Ruiz*, 710 F.3d 1077, 1085 (9th Cir. 2013). For the third category of error, "we have been especially sensitive to the form of prosecutorial statements—so that use of the prefatory phrase 'I submit' has been preferred to the use of 'I think,' in part because the latter is more likely to

lead the jury to give undue credit to the statement that follows." *Weatherspoon*, 410 F.3d at 1147 n.3; *see also United States v. Kojayan*, 8 F.3d 1315, 1321 (9th Cir. 1993). Thus, the phrase "I submit" is "an important flag in alerting the jurors that [] counsel was not stating a fact, but asking them to use their common sense in drawing an inference." *Kojayan*, 8 F.3d at 1321. Although the use of the phrase "I submit" does not give the government license to then vouch for a witness, we have never held that a statement prefaced with the phrase "I submit" constitutes vouching.[4]

1

Applying those principles here, the prosecutor's two challenged statements did not constitute reversible error. Neither statement made a reference to extra-record facts or implied that the government was monitoring the truthfulness of the witnesses. *Necoechea*, 986 F.2d at 1278. Nor did the "I submit" statements function as an impermissible personal guarantee of credibility. *Id.* In context, the challenged statements immediately followed the prosecutor's reference to the

---

[4] Neither *United States v. Flores*, 802 F.3d 1028 (9th Cir. 2015) nor *United States v. Sarno*, 73 F.3d 1470 (9th Cir. 1995), cited by Madril, is to the contrary. In *Flores*, the government *conceded* that the prosecutor's "I submit" statements were improper. 802 F.3d at 1040. In *Sarno*, the prosecutor used the phrase "I suggest," rather than "I submit." I73 F.3d at 1497. In neither case did we hold that the prosecutor's statement was improper.

8

court's jury instruction on witness credibility, which listed factors the jury may consider in assessing a witnesses' credibility. Accordingly, the challenged statements properly argued to the jury that the witnesses' testimony satisfied the factors the jury was told to consider in assessing credibility.

Such argumentation is particularly appropriate where, as here, the witnesses' credibility was "forcefully challenged" at trial, *see id*. at 1280. Put another way, Madril's efforts to impeach the credibility of the government's witnesses at trial invited the government's rebuttal argument in closing that the government's witnesses were credible. *United States v. Young*, 470 U.S. 1, 12 (1985). Because the "prosecutor's remarks were therefore 'invited,' and did no more than respond substantially in order to 'right the scale,'" *id.* at 12–13, they were not improper or unfair. *See United States v. Doss*, 630 F.3d 1181, 1194 (9th Cir. 2011), *as amended on reh'g in part* (Mar. 15, 2011) ("[A] prosecutor may respond substantially to a defense counsel's attack in order to right the scale.").

2

Even though the district court sustained the defense objections to the prosecutor's challenged statements, those statements did not have any "substantial prejudicial effect," *Weatherspoon*, 410 F.3d at 1145, and therefore any possible error was harmless.

9

In determining whether the prosecutor's statements were prejudicial, we ask whether "it is more probable than not that the prosecutor's conduct materially affected the fairness of the trial." *United States v. Wright*, 625 F.3d 583, 613 (9th Cir. 2010) (quoting *United States v. Hermanek*, 289 F.3d 1076, 1102 (9th Cir. 2002)). Here, Madril has failed to establish any such unfair impact. The district court sustained Madril's objection to the prosecutor's "I submit" statements, and properly instructed the jury that "questions, statements, objections, and arguments by the lawyers are not evidence." *See also Weeks v. Angelone*, 528 U.S. 225, 234 (2000) ("A jury is presumed to follow its instructions."). Moreover, there was substantial documentary and testimonial evidence demonstrating Madril's agreement with Cantu-Madril to defraud their mutual clients. The government introduced forged documents and seals found in both of their work spaces, and also introduced the testimony of Pinon-Navarro and Ordonez-Leon that Madril and Cantu-Madril worked together throughout their representations. Given the substantial evidence against Madril, we "cannot conclude that the prosecutor's improper vouching affected the fairness of [the] trial." *Ruiz*, 710 F.3d at 1086.

Moreover, the fact that Cantu-Madril was acquitted of one count "reinforces [the] conclusion that the prosecutor's remarks did not undermine the jury's ability to view the evidence independently and fairly." *Young*, 470 U.S. at 18 n.15; *see*

10

*also United States v. de Cruz*, 82 F.3d 856, 863–64 (9th Cir. 1996) (holding that the prosecutor's allegedly improper comments were harmless because, among other reasons, "the fact that the jury acquitted defendant of one of the charges against her indicates that the jury was able to weigh the evidence without prejudice."). Accordingly, we conclude that the prosecutor's two "I submit" statements did not have a substantially prejudicial effect on the jury. Therefore, this claim fails.

B

We next turn to Madril's argument that the prosecutor committed misconduct in his cross-examination of Madril and in closing arguments by improperly conflating Madril's ethical responsibilities as an attorney with the government's burden of proof on the conspiracy charge. According to Madril, the prosecutor's questions regarding Madril's obligation to follow attorney ethical requirements improperly indicated to the jury that Madril could be convicted if he negligently failed to comply with state professional standards. Because Madril failed to object to this line of questioning or argument, we review for plain error. *United States v. Johnson*, 979 F.3d 632, 636 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 2823 (2021).

11

The district court did not plainly err by failing to prevent (or take curative steps in response to) the prosecution's references to Madril's ethical obligations as an attorney. Evidence regarding the ethical or professional responsibilities of a defendant is admissible when it is probative and relevant. *See United States v. Kellington*, 217 F.3d 1084, 1098 (9th Cir. 2000); *see also* Fed. R. Evid. 403. Here Madril argued that he lacked the requisite mens rea to commit fraud, because he deferred to Cantu-Madril and only did "things that attorneys do on a normal or regular basis for colleagues." The evidence that Madril had sole responsibility for representing his client, given that Cantu-Madril was no longer a lawyer, was relevant because it undermined Madril's claim that he did not know that Cantu-Madril was deceiving his clients. Moreover, because the district court properly instructed the jury on the government's burden of proof, it did not commit plain error by failing to sua sponte instruct the jury that the government could not carry its burden merely by proving a violation of attorney ethical rules. *See Weeks*, 528 U.S. at 234.

**AFFIRMED.**